SANDERS *v.* ABERNATHY.

4-9962                                        253 S. W. 2d 351

Opinion delivered December 22, 1952.

*Claude F. Cooper,* for appellant.

*James M. Gardner,* for appellee.

MINOR W. MILLWEE, Justice. A. J. Abernathy was a resident of Blytheville, Arkansas, where he died March 28, 1952, at the age of 72 years. Appellant, Ethel Sand-

ers, was housekeeper for Mr. Abernathy for about twelve years prior to his death. Attorney Frank C. Douglas, who had at times represented Mr. Abernathy, was appointed administrator of his estate.

On April 4, 1952, the administrator reported to the Probate Court that in taking inventory of a grocery store belonging to the estate, he found in an iron safe a sealed envelope containing two separate writings which appeared to be written and signed by the deceased as follows:

### (1)

### April 22, 1950

I, A. J. Abernathy making my will to Ethel Sanders willing here all property care traler house and all my money She gave me a home after my children ran me a way from home i was sick i used here money made what i have willing my children 1.00 a peace that all fore them please hold this will good for i want Ethel Sanders have every thing in my name at my Deth

A. J. Abernathy

Mr. A. J. Abernathy

### (2)

### April 2, 1948

Willing all i have in my name to Ethel Sanders at my deth i made all of it with here money heirs 1 00 each

A. J. Abernathy

The administrator also reported that appellant had turned over to him another writing dated January 1, 1947, purportedly signed by the deceased but in handwriting different from the signature and containing provisions similar to the writing of April 22, 1950. The administrator further alleged that the writing of April 22, 1950, appeared to be the last will of the decedent, and that all heirs and interested parties should be notified of a hearing for the purpose of approving or contesting the probate of said will.

Appellees who are eight children and heirs of A. J. Abernathy filed a response asserting that the purported will was a forgery by reason of which a fraud was being perpetrated on the court by unknown persons.

After hearings on April 28 and May 9, 1952, an order was entered holding that the purported will was not entitled to probate because the evidence submitted to support it did not meet the requirement of § 20 of Act 140 of 1949 (Ark. Stats., § 60-404). The only question presented on this appeal was whether the trial court's conclusion is supported by a preponderance of the evidence.

Ark. Stats., § 60-404, *supra,* provides: "Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the evidence of at least three credible disinterested witnesses to the handwriting and signature of the testator, notwithstanding there may be no attesting witnesses to such will." Another applicable provision of the Probate Code is Ark. Stats., § 62-2117 (b) which provides that a holographic will shall be proved: "By the testimony of at least three credible disinterested witnesses proving the handwriting and signature of the testator, and such other facts and circumstances as would be sufficient to prove a controverted issue in equity."

C. B. Kittinger was well acquainted with deceased for 7½ years and had rented a store building from him for 2½ years during which time deceased issued monthly rental receipts and other papers including a lease to and in the presence of Kittinger. When asked to give his opinion as to whether the writing dated April 22, 1950, was written and signed by Abernathy, the witness replied: "I would say, surely this is his writing. But I am not an expert."

Charles O. Doyle lived in the same block where Abernathy's store was located and rented a building from him for four years during which time deceased executed rental receipts in Doyle's presence. When asked to state

whether the purported will was in deceased's handwriting, Doyle stated: "It looks like his to me." Deceased also told Doyle shortly before his death that he had made a will to the appellant.

Mrs. A. D. Dowland and her husband rented a store building from deceased for twenty months during which time the deceased lived immediately behind the store building. Mrs. Dowland testified that in addition to rental receipts which deceased executed she had many times observed his writings including notes which he frequently left in the store for others and that she was familiar with his handwriting. When asked about the writing in question, she stated: "Yes, sir; that is Mr. Abernathy's handwriting." A. D. Dowland gave a similar opinion after stating that he had observed deceased's handwriting in the execution of the rent receipts.

Ben T. Mayes also rented a building from deceased for a year, had observed his writing of rent receipts and was familiar with his handwriting. When asked to give his opinion as to whether the writing in question was by the deceased, he replied: "Yes, sir; it is all written in his handwriting."

The vice-president of one bank and the cashier of another where deceased did business for several years, and an experienced abstractor, all testified that they were familiar with deceased's signature and that the "A. J. Abernathy" appearing once at the top and twice at the bottom of the writing in question were in the handwriting of deceased. After examining the writing in question and comparing it with other exhibits containing the admitted signature of the decedent, Cashier Bannister also stated that in his opinion the whole writing in question was in decedent's own handwriting. He explained in detail the reasons for his conclusion and pointed out similarities of certain letters in the body of the will to those in the admitted signatures. Upon further examination by the court, he also admitted that there were some dissimilarities in some of the letters of

the admitted signatures and the body of the instrument in question but he also stated that such dissimilarities existed even as between the several admitted signatures.

There were other witnesses who gave testimony similar to that heretofore set out. The only testimony offered in opposition to the foregoing was that of the witness, Mrs. Ray Moxley, offered by the appellees. Mrs. Moxley testified that she lived near a store operated by deceased in Kennett, Missouri, about 27 years ago; that she had seen him try to write; that his wife did most of the writing at that time and that witness had not observed his handwriting in the past 20 years. She stated that the writing in question "doesn't look like his writing to me."

E. E. Abernathy, one of the nine children of the deceased, refused to join in the contest of the purported will and testified that in his opinion it was in his father's handwriting.

In *Dewein* v. *State*, 120 Ark. 302, 179 S. W. 346, we defined "credible person", within the meaning of a change of venue statute, as follows: "A credible person is one who has the capacity to testify on a given subject and is worthy of belief; and one who lacks knowledge on the subject under investigation is not a credible person to be accepted as worthy of belief in that particular inquiry." Many courts have defined a "credible witness" as one who, being competent to give evidence, is worthy of belief. Words & Phrases, Vol. 10, p. 344. This definition has been applied to a statute setting forth the requirements to make a valid holographic will similar to those found in our statute. *In re Williams' Will*, 215 N. C. 259, 1 S. E. 2d 857.

The witnesses offered by the administrator and the appellant denied that they had any interest in the controversy and none is shown in the record. The testimony of E. E. Abernathy was, of course, against his own interest. We cannot agree with appellees' contention that the administrator and the appellant did not offer as

many as three witnesses who were sufficiently familiar with deceased's handwriting to testify thereto. Nor are we able to conclude by a mere comparison of exhibits, as suggested by appellees, that said witnesses are not credible within the meaning of the statute.

It is our opinion that the trial court's conclusion, that the evidence submitted in support of the purported will does not meet the requirement of § 60-404, *supra*, is against the preponderance of the evidence. The judgment is accordingly reversed and the cause remanded with directions to admit the will to probate.