Lisa STEVENS *v.* HERITAGE BANK,
Estate of Walter E. Stevens, III, Deceased, Ashley Stevens,
Blair Stevens Renner

CA 08-40                                                289 S.W.3d 147

Court of Appeals of Arkansas
Opinion delivered November 12, 2008

*Womack, Landis, Phelps & McNeill, P.A.*, by: *Tom D. Womack* and *J. Nicholas Livers*, for appellant.

*Rita Reed Harris, P.A.*, by: *Rita Reed Harris*, for appellee Estate of Walter E. Stevens, III, Deceased.

·   *Friday, Eldredge & Clark, LLP*, by: *Allison J. Cornwell* and *Bruce B. Tidwell*, for appellees Ashley Stevens and Blair Stevens Renner.

JOSEPHINE LINKER HART, Judge. Lisa Stevens, the surviving spouse of Walter E. Stevens, III (decedent), appeals from the declaratory-judgment order of the St. Francis County Circuit Court that directed the co-administrators to reduce her dower interest for certain claims against the estate. She argues that the court's decision was erroneous because of the general rule that the widow takes her dower free of her husband's debts and that the estate was not entitled to a setoff in that she was not indebted to the decedent's estate. We agree and reverse and remand for further proceedings consistent with this opinion.

The decedent died intestate on October 9, 2003, survived by Lisa Stevens and two adult children, appellees Ashley Stevens and Blair Renner (collectively, the children). On January 15, 2004, co-personal representatives were appointed to administer the estate. Two claims against the estate are relevant to this appeal.

The first claim concerned a note owed to appellee Heritage Bank in the principal amount of $60,066.50. The note was signed by Stevens, individually and as president of Antique Warehouse of Jonesboro, Inc., a business she owned. The note was also signed by the decedent, individually and as guarantor, although he had no ownership interest in the business. The bank filed a claim against the estate on August 2, 2005, alleging that, as of July 19, 2005, the balance owed was $39,497.69.

The second claim involved a commission owed to a real estate agent for the lease of real property to a pharmacy. The real estate was owned twenty-five percent by the decedent in his

individual capacity and seventy-five percent by other members of the decedent's family. Stevens and the decedent ultimately acquired the other seventy-five percent interest as tenants by the entirety. Charles White served as broker for the real estate transaction and was to be paid a commission for his services. On April 8, 2002, prior to the death of the decedent, White filed suit alleging the decedent's failure to pay the real estate commission. Lisa Stevens was not made a party to that action. Although the decedent made an unsuccessful attempt at settlement during his lifetime, the case was ultimately settled after the decedent's death for $67,500, paid from the decedent's estate. In addition, the estate incurred attorney's fees of $2,975.76 in defending against White's claim.

On February 16, 2006, the personal representatives filed a petition seeking direction from the court as to the calculation of Stevens's dower interest and whether the two claims should be paid out of the estate's general assets or be set off against Stevens's dower interest. Stevens denied the material allegations of the petition. Stevens later amended her answer to assert that the proceeds of the note to the bank were used to purchase furnishings for the home she and the decedent shared. She also asserted that the decedent was a joint maker of the note and that the estate should bear one-third of the liability for the debt. She denied that her dower interest should be reduced by any sum for the settlement of Charles White's claim. In their response, the children denied that the claims should be paid from the general assets of the estate but, instead, should be set off from Stevens's dower interest.

A bench trial was held on September 25, 2006. Jeff Brecklein, executive vice president of the bank, testified that the loan at issue was made in June 2003 in the principal sum of $60,000 to Antique Warehouse of Jonesboro, Inc., the decedent, and Stevens. The loan was secured by accounts receivable and inventory. Brecklein said that the loan was extended twice, once in July 2005 and again in December 2005. At the time of the extensions, Brecklein knew that the decedent had died in 2003. He stated that the current balance owed on the note was $39,128.38. He was aware that there were time limitations for filing claims against estates but could not otherwise explain why the bank's claim was not filed until May 2005. He described the loan as current, never having gone into default.

On cross-examination, Brecklein said that he was looking to the decedent for repayment based on the fact that the decedent

called to arrange the meeting about the loan and outlined the intended use of the funds. The decedent signed the note individually and as guarantor. Brecklein said that he did not know if the decedent received any direct benefit from the loan proceeds. He said that the loan would not have been made if the decedent had not guaranteed it.

Lisa Stevens testified that the note at issue was signed by three borrowers, including herself and the decedent. The proceeds were used to help her start an antique business by purchasing inventory. She described the extensions of the note after the decedent's death as necessary because the attorney for the estate omitted the note as a debt of the estate. She said that she made the payments on the note before asking the bank to convert the note to a single-payment note. According to Stevens, the estate never paid on this note. She said that most of the inventory had been sold and the proceeds used to pay bills, including payments on the note at issue. Finally, Stevens admitted that some of the items purchased with the loan proceeds were used in her home, although she could not identify all of those items from memory. She also said that the decedent was not an officer or director of the corporation but did attend antique sales with her.

Stevens said that she and her husband purchased the seventy-five percent interest in the property at issue in the White claim in 2000, after the lease was executed. She said that they held title as tenants by the entirety and that she now owned the entire seventy-five percent interest. She said that the tenant paid $9,300 per month in rent, while the payment on the note was $6,000 per month. She said that the purchase price was $719,313.21, and that she was obligated on the note. She said that she was able to receive the rental income after she obtained new financing for the property in September 2005. She did not sign the original lease but signed a new lease after she refinanced the property.

Charles White testified that the lawsuit he filed against the decedent arose from a complicated process where White introduced the decedent to representatives of a national pharmacy chain. He said that he was the broker on a transaction where the decedent would build a building before leasing the building to the pharmacy chain. According to White, the decedent individually owned a twenty-five percent interest in the property. His compensation for the transaction was to be an assignment of ten percent of the monthly rental. He said that a draft settlement agreement was negotiated but that the decedent changed his mind,

believing that White's fee was too high and that White should receive six percent for his commission. It was this disagreement and change of mind that led to the lawsuit. He said that it was undisputed that the decedent owed him his commission; rather, the dispute was over the amount of the commission. White said that he was never paid during the decedent's lifetime, but that the claim was ultimately settled and that the estate paid him $67,500. White said that the lease was executed in 1999 between the decedent, individually, and the pharmacy, despite the fact that the decedent only owned a twenty-five percent interest in his individual capacity. White was aware that the decedent acquired the outstanding seventy-five percent interest but was unaware of how the decedent took title. He also did not know if Stevens was obligated on the note to fund the construction.

Buddy Billingsley, one of the co-personal representatives, testified that the decedent attempted to settle the Charles White litigation during his lifetime. Billingsley did not believe that any of the settlement of the White claim should be charged to Stevens's dower interest. He and the other personal representative disagreed over the issue. He also said that Stevens should be charged with some portion of the note owed to Heritage Bank.

On March 8, 2007, the circuit court, stating that it was not satisfied with its earlier decision, issued another letter opinion addressing the claims anew. The court found that the estate's obligation on the note was not discharged pursuant to Ark. Code Ann. § 4-3-605(d) because the estate failed to prove that it suffered a loss as a result of the extension and modification of the note. Even though the court found that the decedent was an accommodation maker, the court found that the bank could still look to the decedent or his estate for payment of the note and that any amount paid by the estate should be set off against Stevens's dower. The court noted that Stevens and the bank both expected the estate to pay only one-third of the note.

As for the Charles White settlement, the court found that Stevens, through her attorney, approved the settlement without consenting to any of the settlement being attributable to her. Stevens was found to have benefitted and ratified the lease between the decedent and the pharmacy by accepting the lease payments. The court also found that Stevens was aware that her husband and White were negotiating the lease. The circuit court concluded that Stevens would be unjustly enriched if she were not responsible for some portion of the White settlement. Accord-

ingly, the court allocated seventy-five percent of the settlement and attorney's fees to her. The circuit court then proceeded to address other issues not relevant to this appeal.

The court calculated Stevens's total dower in the decedent's personal property at $302,843.84. The court then subtracted the amount of distributions made, one-third of the bank's claim, seventy-five percent of the White claim, and other amounts, some of which were still undetermined, to arrive at Stevens's final dower.[1] A decree memorializing these findings was entered on September 26, 2007. This appeal followed.

Our standard of review in matters such as this is well settled:

> [P]robate cases are reviewed de novo . . . [and] we will not reverse the probate judge's findings of fact unless they are clearly erroneous. . . . A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed.

*Remington v. Roberson*, 81 Ark. App. 36, 39, 98 S.W.3d 44, 46 (2003) (citations omitted) (alterations in original). Furthermore, as it may pertain to findings of fact, we defer to the superior position of the probate judge to weigh the credibility of the witness. *See Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000).

Because the decedent died leaving a surviving spouse and children, Stevens, as the surviving spouse, is entitled to one-third of the decedent's real property and one-third of the personal property. Ark. Code Ann. §§ 28-11-301, 28-11-305 (Repl. 2004). The surviving spouse is entitled to dower without deduction for any debts, claims, or expense of administration. *Dolton v. Allen*, 205 Ark. 189, 167 S.W.2d 893 (1943).

■ Stevens first argues that the circuit court erred in setting off seventy-five percent of the settlement in the Charles White litigation against her dower. We agree. Arkansas Code Annotated section 28-53-111 allows a debt a distributee owes to the decedent's estate to be set off against any property of the estate

---

[1] Schedule C of the decree calculated Stevens's net dower interest in the decedent's personal property at $141,870.57. She was also entitled to interest on her dower of $24,717.38 through August 31, 2007.

to which the distributee may be entitled.[2] However, this is not a debt Stevens owes to the estate. Rather, it is a debt the estate paid to settle White's claim against the decedent. Stevens was not made a party to the litigation between White and the decedent. Prior to settlement and subsequent to the opening of the estate, the estate's representatives did not file a claim seeking contribution from Stevens, either in the White litigation or in the estate proceedings. There was never a determination that Stevens owes the estate for any part of the White settlement. Instead, the circuit court merely decided that Stevens would be unjustly enriched if some portion of the settlement were not set off against her dower.

■ Unjust enrichment has no application in this case. To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. *El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 269 S.W.3d 362 (2007). One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right. *Id.* Here, Stevens is not receiving something to which she is not entitled. She and the decedent owned the property as tenants by the entirety and, upon the decedent's death, the property passed to her by operation of law.[3] The contract between the decedent and White was entered into prior to Stevens acquiring any interest in the property. At that time, he was acting solely in his individual capacity. While arguably Stevens may have been aware of her husband's activities, she was not made a party to the lawsuit and, therefore, her acquiescence to the settlement can have no binding effect on her right to her dower. Thus, the debt was solely that of the decedent and, therefore, Stevens takes her dower free from the White claim. *Dolton, supra.* Therefore, the circuit court erred in allowing a portion of the White settlement to be set off against her dower.

■ Stevens next argues that the circuit court erred in allowing a portion of the note owed to the bank to be set off against her dower. Stevens devotes much time to the proposition

---

[2] Stevens is a "distributee" of the estate within the meaning of the probate code. A distributee "denotes a person entitled to real or personal property of a decedent, either by will, as an heir, or as a surviving spouse . . . ." Ark. Code Ann. § 28-1-102(a)(7) (Repl. 2004).

[3] She also acquired the outstanding twenty-five percent interest the decedent owned individually as a partial distribution of the estate.

that the decedent was a maker of the note instead of an accommodation party as found by the circuit court. That effort is misplaced because an accommodation party can sign the note as a maker. *See* Ark. Code Ann. § 4-3-119(b); *Camp v. First Fin. Fed. Sav. & Loan Ass'n*, 299 Ark. 455, 772 S.W.2d 602 (1989). Although the circuit court was correct in stating that the estate could seek reimbursement for any amount it must pay on the note, *see* Ark. Code Ann. § 4-3-419(f) (Supp. 2007), that is not the same as finding that Stevens owes a debt to the estate. As discussed above, section 28-53-111 allows a setoff when a distributee is indebted to the estate. Where there is only a contingent claim, still subject to, as yet, unasserted defenses available to Stevens, we hold that it would be wholly inappropriate for the estate to retain any portion of Stevens's dower to satisfy such a claim. This is not to say that the bank and the estate are without remedies. They can file suit directly against Stevens for repayment of the note.

Reversed and remanded.

GLADWIN, ROBBINS, BIRD, GRIFFEN, and HUNT, JJ., agree.