2010 Ark. App. 310

**Adrian David MINTON, Appellant**

v.

**Danny MINTON, David Minton, and Estate of Freddie Lynn Minton, Deceased, Appellees.**

**No. CA 09–883.**

Court of Appeals of Arkansas.

April 14, 2010.

C. Shane Ethridge, James Lucas Graham, Hot Springs, for appellant.

Bobby Kenneth Keeter, Mena, for appellees.

JOSEPHINE LINKER HART, Judge.

Adrian David Minton appeals from a Montgomery County Circuit Court order admitting to probate as codicils to decedent Freddie Lynn Minton's formal will two hand-written documents. He argues that the trial court erred in admitting the documents because (1) the handwriting and signature were not established by three credible, disinterested witnesses; (2) the alleged holographic codicil[1] lacked testamentary intent. We affirm.

On June 22, 1999, Freddie Lynn Minton executed a formal will that bequeathed all of his real and personal property in the following manner: one half to his son, Danny Minton, one fourth to another son, David Minton, and one fourth in trust to his grandson, Adrian Minton, until Adrian reached his twenty-fifth birthday. Danny was nominated as executor. The will did not mention Norma Minton, whom Freddie subsequently married, nor Debbie Jiles, whom the executor acknowledged "may" be Freddie's daughter.

On April 19, 2007, Freddie died. On April 27, 2007, Danny petitioned to have the will admitted to probate. The petition was granted on May 3, 2007, and Danny was appointed executor. Norma asserted her dower rights, and later unsuccessfully sought to have Danny removed as executor. However, Norma subsequently relinquished her interest in the estate to David and Danny on July 24, 2008, for a cash payment of $56,000. Debbie Jiles also relinquished her interest in the estate to David and Danny by agreement dated July 28, 2008, for a $5000 payment.

Meanwhile, on November 5, 2007, Danny petitioned to have two hand-written three-by-five-inch sheets admitted to probate as a two-page holographic codicil.[2] Adrian

---

1. The trial court found that the two documents constituted a single codicil.

2. The first sheet contained the following:
   4–25–03  (cursive) Fred Minton
   (printing)
   Danny + David
   if anything happens to me
   before I get the will changed
   I want to give
   Adrian $10,000 and
   the land + trailer
   that is fenced
   off where the

   trailer sits that
   he lives in and the
   (trailer scratched out) mobile home
   and I want to give
   Debbie Jiles $5000.00 (1)
   The second sheet contained the following, also printed except as noted:
   Danny + David
   I want you'll
   to work out how
   to divide the
   house + the farm
   and all other

timely objected, and the matter was heard on March 20, 2009.

At the hearing, five witnesses testified about the handwriting on the two sheets. Glen Minton, Freddie's nephew, testified that he was familiar with Freddie's "signature" because he was his uncle's insurance agent and witnessed him signing checks. On cross-examination, however, he admitted that he could not swear that the printed words in the body of the sheets were Freddie's writing. Nonetheless, on re-direct, he stated he believed that the handwriting was Freddie's. Nancy Kay Minton, Glen's wife, similarly testified that the signature looked like Freddie's, but she admitted that she did not know if the printing was. Nonetheless, on re-direct, she agreed that the rest of the document "appears" to be Freddie's writing.

Brenda Minton, the widow of Freddie's brother, testified that she was familiar with both Freddie's signature and his printing. She opined that the writing on the two sheets was Freddie's. However, on cross-examination, she stated that she actually saw Freddie print something twenty-one years ago, and she conceded that she could not say with any degree of certainty that the writing on the sheets was the same. Nonetheless, she agreed on re-direct that it was "more likely than not" Freddie's signature and printing. Norma Minton, Freddie's widow, testified that she was familiar with both Freddie's signature and his writing, and she was certain that the two sheets were in his handwriting. Further, over Adrian's hearsay objections, she testified that the sheets were consistent with discussions she had with Freddie about his changing his will. On cross-examination, she noted that she

was no longer a party to the probate proceeding, having relinquished her interest by agreement with Danny and David.

Finally, Adrian Minton was called in the estate's case. Adrian admitted that in his deposition he conceded that he stated that the handwriting on the sheets "looks identical" to Freddie's, but qualified his answer by stating that he "never saw him write it, I don't know."

The trial court found that the two sheets constituted a single codicil and that the document was in the "proper handwriting" of the decedent, as established by the testimony of at least three credible disinterested witnesses. It ordered the codicil admitted to probate. Adrian timely appealed from that order.

Before we take up Adrian's arguments, we first note our standard of review. Probate cases are reviewed de novo; however, we will not reverse the probate judge's findings of fact unless they are clearly erroneous. *Stevens v. Heritage Bank,* 104 Ark.App. 56, 289 S.W.3d 147 (2008). A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* In our review, we defer to the trial court's evaluation of the credibility of the witnesses. *O'Fallon v. O'Fallon ex rel. Ngar,* 341 Ark. 138, 14 S.W.3d 506 (2000).

Adrian first argues that the trial court erred in admitting the codicil to probate because the handwriting and signature were not established by three credible, disinterested witnesses. He notes that the plain language of Arkansas Code Annotated section 28–25–104 (Repl.2004) requires

money + insurance money, cows + equipment.
Adrian has 3 cows
+ 2 hfrs + 3 caves

in the field
4–25–03
(cursive) Fred Minton

that both the handwriting *and* the signature be established by three credible, disinterested witnesses, yet only two witnesses, Norma and Brenda, professed any knowledge about Freddie's printing. Adrian cites *Sanders v. Abernathy*, 221 Ark. 407, 411, 253 S.W.2d 351, 353 (1952), for the definition of "credible person" as "one who has the capacity to testify on a given subject and is worthy of belief; and one who lacks knowledge on the subject under investigation is not a credible person to be accepted as worthy of belief in that particular inquiry." Given this definition, he asserts that Glen and Nancy Kay are not "credible witnesses" because they admitted that they were unfamiliar with Freddie's printing. Likewise, he contends that Brenda was not a credible witness because she could not say with certainty that the printing she saw in the purported codicil was the same as the printing she saw twenty-one years earlier. Adrian argues that even if this court were to accept that Brenda was a credible witness, her testimony made only two credible witnesses "at the most." We disagree.

We agree that Glen's and Nancy Kay's candid admission that they were completely unfamiliar with Freddie's printing made them not "credible" as defined by *Sanders v. Abernathy*. We, however, do not believe that the testimony of Brenda is similarly infirm. While her basis of knowledge of Freddie's printing was somewhat dated, it was not rendered not credible as a matter of law. That leaves two witnesses who testified about Freddie's handwriting—Norma and Adrian himself. Adrian essentially concedes that Norma qualifies as a credible witness, and we agree. Likewise, he makes no mention of his own testimony in which he, albeit reluctantly, agreed that the codicil was written in what appeared to be Freddie's handwriting. In *Sanders v. Abernathy*, the

supreme court seemed to give special credence to testimony regarding the authenticity of a testator's handwriting where that testimony was against an heir's interest. We believe that this very situation is present in this case. Accordingly, we hold that the trial court did not err in finding that the requirements of Arkansas Code Annotated section 28–25–104 had been satisfied.

Adrian next argues that the trial court's decision to admit the two documents purported to be in the handwriting of the decedent was clearly erroneous because the alleged holographic codicil lacked testamentary intent. Citing *Edmundson v. Estate of Fountain*, 358 Ark. 302, 189 S.W.3d 427 (2004), he contends that the phrase in the purported codicil, "If anything happens to me before I get the will changed I want to give," is merely precatory language. Adrian asserts that "directions" are mandatory and all that the purported codicil stated was that "he merely has a hope to change his will and if something happens before it gets accomplished there are certain things he wants to happen." As a subpoint, Adrian argues that if extrinsic evidence is viewed in this case, the alleged holographic codicil would most certainly fail to have the required testamentary intent to be admitted to probate. In asserting this proposition, he urges us to find analogous the case of *Estate of O'Donnell*, 304 Ark. 460, 803 S.W.2d 530 (1991). We find no merit to these arguments.

We first dispose of Adrian's subpoint by noting that *Estate of O'Donnell* was overruled by *Edmundson v. Estate of Fountain, supra*. There the supreme court held that extrinsic evidence of intent was not admissible to supply testamentary intent if the document itself contained no such words. The issue therefore is solely whether the purported codicil contains

words of direction from which a court may infer testamentary intent. We believe it does.

First, the authority that Adrian urges us to rely on, *Edmundson v. Estate of Fountain,* is easily distinguishable from the case-at-bar. In *Edmundson,* the supreme court reversed a trial court's order admitting to probate a hand-written list titled "Last Will Jan. 1, 1997" that merely listed individuals and personal or real property under their names. Despite the caption, there was not a single word that communicated the purported testator's intention to give any of the listed persons any of the property. Conversely, in the instant case, the purported codicil states Freddie's intent to "give" to certain beneficiaries items of property in a way that modifies the percentages stated in the formal will. The fact that the writing references a future intention to incorporate these changes into a new formal will is not dispositive of this case. Such is the nature of codicils. In *Kinnear v. Langley,* 209 Ark. 878, 192 S.W.2d 978 (1946), the supreme court stated:

> A codicil is not an entirely new will. A codicil is, rather, a postscript to the will showing something added by the testator to the original document. Just as a postscript to a letter may show a new idea of the writer or a change, or amendment to a thought, expressed in the letter: so a codicil may express a new bequest or a change or modification of a bequest in the will. Just as the postscript does not physically or literally erase or expunge whatever it affects in the letter; so, also, the codicil does not physically or literally erase or obliterate whatever it affects or changes in the original will. The will is probated along with the codicil; together they constitute the 'last will and testament' of the testator or testatrix.

Thus, we affirm the trial court's admission of the codicil to probate.

Affirmed.

ROBBINS and HENRY, JJ., agree.