2012 Ark. App. 168

**Danny VICTORY, Sandra Victory, and Joshua Victory, Appellants**

v.

**Jonnie SMITH, Joan Leonard, Allie Jean Victory, Patsy Dyer, and Ellisa Bell Sutton, Appellees.**

No. CA 11–928.

Court of Appeals of Arkansas.

Feb. 22, 2012.

Melvin E. Morgan, Clinton, for appellant.

Jerry Dean Patterson, Marshall, for appellee.

JOHN B. ROBBINS, Judge.

This appeal concerns a real estate transaction between appellee Ellisa "Lisa" Bell Sutton and appellants Danny, Sandra, and Joshua Victory. In March 2008, Lisa agreed to sell what was known as the Treece family's old home place (thirty-three acres, a house, and two barns in Leslie, Arkansas) to her cousin Danny, his wife, and their son for $60,000. In April 2008, Danny took a special warranty deed executed by Lisa and filed it of record. The Victorys did not execute the accompanying promissory note and mortgage to secure payment. Lisa filed suit in April 2010 to rescind the deed alleging actual and constructive fraud by the Victorys.[1]

1. Additional plaintiffs/appellees—Jonnie Smith, Joan Leonard, Allie Jean Victory, and Patsy Dyer—voluntarily dismissed their cause of action against the Victorys prior to the

The Victorys filed a counterclaim for specific performance to complete the transaction or alternatively for damages. The Searcy County Circuit Court entered an order on June 17, 2011, that rescinded the deed given to the Victorys, dismissed the counterclaim, and awarded reasonable attorney fees to Lisa pursuant to Ark.Code Ann. § 16–22–308 (Repl.1999). This appeal followed. The Victorys contend on appeal that the trial court clearly erred in rescinding the deed, in dismissing their counterclaim, and in awarding Lisa attorney fees. We reverse and remand.

In a cause of action to set aside a deed based upon fraud, the plaintiff is required to present clear and convincing proof of the fraud before the deed may be set aside. *Hearne v. Banks,* 2009 Ark. App. 590, 376 S.W.3d 444. The common-law elements of fraud are (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) the intent to induce action or inaction in the reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of that reliance. *Se. Distrib. Co. v. Miller Brewing Co.,* 366 Ark. 560, 237 S.W.3d 63 (2006). A fraudulent misrepresentation by one party to another must relate to a past event or present circumstance; projections of future events or conduct cannot support a fraud claim as a matter of law. *Id.; S. Cnty., Inc. v. First W. Loan Co.,* 315 Ark. 722, 871 S.W.2d 325 (1994). On appeal, the question is not whether we are convinced there was clear and convincing evidence to support the findings of the circuit court, but whether we can say the findings are clearly erroneous. *Hearne, supra.* This does not require uncontradicted proof, and we must defer to any credibility determinations made by the trial court. *Id.*

Many of the surrounding facts of this transaction are not in dispute, and a recitation of some of those facts will clarify the relationships of the persons involved. The Treece property was originally owned by Lisa and Danny's grandparents. After the grandparents' deaths, the property was intended to be held for the benefit of the children of the Treeces. Lisa's mother Jonnie Smith, Danny's mother Allie Jean Victory, Joan Leonard, and Patsy Dyer are among those Treece children. Record title to the home place was held by Lisa beginning in 1993. In 2008, Allie asked if Danny was interested in purchasing the property, and he was. Jonnie informed Lisa that the siblings would be interested in selling the property to Danny, his wife, and his son for $60,000. The proceeds were to be paid to four of the living siblings: Jonnie, Allie, Joan, and Patsy. Lisa acted on her mother's wishes.

On March 12, 2008, Danny's wife Sandra and their son Joshua signed an offer to Lisa, agreeing to pay $60,000 cash for a general warranty deed to the property. Lisa signed an acceptance of that offer; next to her signature was the date of March 13, 2008. On March 14, 2008, the estate of another of the Treece children filed a lis pendens against the property, creating a cloud on the title.[2] The deal nonetheless went forward. However, rather than a cash transaction and a general warranty deed, Lisa had an attorney prepare a special warranty deed, a promissory note, and a mortgage. Danny came to Lisa's office on April 10, 2008, where

commencement of the hearing. We refer only to plaintiff/appellee Lisa because she held title to the property, and this creates less confusion for the reader.

**2.** Charles Neils Hendrickson filed the lis pendens on behalf of the Estate of Connie Joe Treece.

Lisa executed the deed conveying title to Danny, Sandra, and Joshua. Lisa presented Danny with the promissory note and mortgage, both of which he signed the same date, stating that the Victorys promised to pay $60,000 within six months to the four siblings. Sandra and Joshua never signed either of these documents, although a notary's acknowledgment verifies that all three members of the Victory family signed the mortgage on April 10, 2008.

Danny had the special warranty deed recorded on April 11, 2008. Danny, after hiring counsel and pursuing legal action, obtained an order removing the estate's lis pendens on January 21, 2010. On March 22, 2010, Lisa filed for record the mortgage that was signed by Danny in 2008. Lisa filed suit to rescind the special warranty deed on the basis of fraud in April 2010. Lisa amended her complaint twice: November 2010 and January 2011. The Victorys denied Lisa's allegations and filed a counterclaim for specific performance or alternatively damages. The Victorys wanted to complete the transaction. At the beginning of trial, Lisa's attorney stated that foreclosure of her mortgage was not being sought, only setting aside the deed.

The remainder of facts are in dispute based upon the varying testimonies at trial, which we examine now. Lisa testified that she and Danny became aware of their uncle's estate having filed a lis pendens against the property prior to execution of the deed. Lisa said that they "had a side deal" for Danny to take steps to clear up the title problem; she did not expect to close their transaction until after the lis pendens was removed. She testified that Danny was supposed to have his wife and son sign the mortgage and promissory note. Lisa said that although Danny had contacted her in October or November

2008 wanting to pay the $60,000, she would not accept payment until their uncle's lis pendens was removed. She acknowledged that Danny succeeded in removing that lis pendens in January 2010. When asked how Danny defrauded her, she said he agreed to have the promissory note and mortgage signed by his wife and son, and to file the mortgage, but did not do it. Lisa said that she called Danny, she thought in the months after the extensions she gave, to discuss the payment, but Danny did not call her back. Lisa agreed that in March 2010 she filed the mortgage Danny signed, and she filed her lawsuit against the Victorys in April 2010.

Allie (Danny's mother and Lisa's aunt) testified that Danny said to her shortly after recording the deed that his wife and son were not obligated to pay the $60,000 because they never signed the promissory note or mortgage, nor were they asked to sign. Allie said she did not recall exactly what her son said or when, but it was to the effect that he was not paying the $60,000. Allie also testified that her grandson Joshua did say "everybody would get their money."

Joann Leonard, one of the four Treece children who was to receive the $60,000 proceeds, testified that she heard Danny talk about the deal around the six-month mark (October 2008) when "everybody got into it about the property." She said Danny informed her that he had paid a dollar for the deed and "Lisa was giving him extensions to pay for the property."

Danny testified that he and Lisa discussed their uncle's lis pendens prior to her executing the deed. He said Lisa agreed to deed the property to him for a dollar, have Danny clear up the title problem because she did not have the time, and then credit Danny those costs against the $60,000 price. Thereafter, he said Lisa summoned him to her office, where on

April 10, 2008, she presented the deed, promissory note, and mortgage. He said Lisa instructed him to record the deed the following day, which he did, but Lisa said nothing about having Sandra or Joshua sign the other documents or file them. Danny confirmed that Lisa wanted him to take care of the lis pendens before accepting payment. He said that he obtained the order removing the lis pendens on January 21, 2010. His father died days later, and the funeral was February 1. Thereafter, Danny said he resumed efforts with a bank to finance and close the deal.

Danny said he tried to pay the $60,000 both before and after he cleared the lis pendens, but Lisa would not accept it. Danny testified that he and his son cleaned, trimmed, painted, fenced, insured, and paid taxes on the deeded property. He was still "willing and able" to pay Lisa the $60,000.

Bank of the Ozarks loan officer Gina King testified that the Victorys qualified for the loan to pay for the Treece property. Her bank was ready to proceed as of April 2, 2010, but the only problem was that the title company was requiring a correction deed to clear up a minor legal-description omission in the chain of title and release of Lisa's mortgage. An employee of the title company, Juanita Holliman, testified that the legal-description omission dated back in the chain of title to 1970. Holliman said they needed Lisa to sign a correction deed and also to release the 2008 mortgage she filed in 2010.

At the conclusion of the evidence, the trial court reformed the deed to correct the scrivener's error, which was with the parties' agreement. The trial judge announced substantive findings and granted rescission of the deed, specifically finding that (1) the Victorys |₇intended to induce Lisa to rely on their representation that they had and would pay $60,000 within six months so that Lisa would execute and deliver the deed; (2) Lisa gave the Victorys extensions of time to clear up the lis-pendens issue before she would expect payment; (3) the order clearing that issue was entered on January 15, 2010; (4) the Victorys had ample time to tender payment before Lisa filed suit in November 2010; and (5) Lisa suffered by conveying title without receiving payment. The trial judge dismissed the counterclaim and awarded reasonable attorney fees to Lisa because the case involved a contract. Lisa's attorney prepared the precedent at the trial judge's request. A formal order was entered, adding further that the trial court believed the Victorys falsely promised to all sign and to record the promissory note and mortgage but instead left Lisa without the security to ensure payment.

■ The Victorys argue, and we agree, that the trial court clearly erred. First, the trial court erred in fact. The record reflects, and the parties agreed, that Lisa did not expect and would not accept payment from Danny until the lis-pendens issue was resolved. That order was signed on January 15 and filed of record on January 21, 2010. The trial court found that the Victorys had ample time to tender payment after the lis-pendens order before Lisa filed suit, but the trial court wrongly believed she filed suit in November 2010. The record reflects that Lisa filed suit on April 15, 2010 and amended her complaint twice (November 2010 and January 2011). Instead of the eleven months contemplated by the trial court, it was at most three months during which Lisa might have been willing to accept the money. There are other errors in dates in the judgment, but we do not discuss those because they are obviously typographical errors.

|₈Even without considering this particular error of fact, the trial court clearly erred in finding that clear and convincing

evidence of fraud, sufficient to set aside a deed, was presented. Lisa did not rely to her detriment on any purported promise to have all three sign and record the securing documents. Lisa's testimony established that she knew about the estate's lis-pendens issue prior to executing the deed, she would not accept Danny's offer to pay the $60,000 note before the lis-pendens issue was cleared, and she filed the mortgage signed by Danny within two months of the lis pendens being removed by court order. All the evidence indicates Danny's willingness and ability to pay her, but Lisa has not cooperated in accepting payment. There is simply no damage resulting from the alleged fraud. *See Tyson Foods, Inc. v. Davis,* 347 Ark. 566, 66 S.W.3d 568 (2002).

In addition, there is no evidence that Danny promised to have the lis-pendens issue resolved by a certain date. There is no evidence that Danny acted to stall the clearing of that lis pendens. Even if so, projections of future events or conduct, if made, cannot support a fraud claim as a matter of law. *Se. Distrib., supra.* In summary, we hold that the trial court's finding, that Lisa presented clear and convincing evidence of fraud sufficient to set aside the deed, is clearly erroneous. We, therefore, reverse the order that rescinded the special warranty deed and dismissed the Victorys' counterclaim.

The Victorys also contend on appeal that the trial court erred in awarding Lisa attorney fees pursuant to Ark.Code Ann. § 16–22–308 (Repl.1999) on her claim for rescission of the deed. Because we reverse the trial court's grant of rescission, this necessarily means we reverse ⌊9the award of attorney fees on that claim. No further discussion is warranted on the attorney-fee issue presented on appeal.

Reversed and remanded with directions that the trial court rule on the Victorys' counterclaim.

WYNNE and ABRAMSON, JJ., agree.