

# ARKANSAS COURT OF APPEALS
DIVISIONS I & II
No. CV-16-373

| | |
|---|---|
| MICHAEL R. MORRIS<br>    APPELLANT/CROSS APPELLEE<br><br>V.<br><br>NICKOLAS KNOPICK<br>    APPELLEE/CROSS APPELLANT<br><br>V.<br><br>MARIE HADZIMA<br>    CROSS-APPELLEE | **Opinion Delivered:** April 12, 2017<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT<br>[NO. 03CV-08-112]<br><br>HONORABLE JOHN R. PUTMAN, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND DISMISSED WITHOUT PREJUDICE IN PART ON CROSS-APPEAL |

## DAVID M. GLOVER, Judge

This appeal primarily pertains to the conveyance of a Matco toolbox and tools.[1] The transfer of these items was included as a term of a real-estate contract entered into by buyer Margaret Conti and seller Michael Morris. Although the contract was signed by Conti and Morris, the negotiations were between Morris and Conti's son, Nickolas Knopick. The litigation commenced with Conti suing Morris, but Knopick was eventually substituted for Conti by agreement of the parties. Following a bench trial, the trial court ordered Morris to pay Knopick $92,000 in damages. Both Morris and Knopick appeal.

---

[1]The case returns to our court after a previous dismissal for lack of a final order. *See Morris v. Knopick*, 2015 Ark. App. 653.

I. *Background*

Michael Morris listed for sale a house and thirty acres of land in Baxter County, Arkansas. He initially listed the property with Century 21 Realty. While the property was listed with Century 21, Nickolas Knopick toured the house with a realtor from Lake River Land Realty; he had an exclusive-buyer agency agreement with Lake River Land Realty that ran from June 20, 2007, until December 31, 2007.

After Morris's listing with Century 21 expired, he and Knopick entered into negotiations regarding the sale of the property. The parties dispute the relevant facts surrounding the negotiations. However, the negotiations culminated with Morris entering into a contract with Margaret Conti, Knopick's mother, for the sale of the house, surrounding acreage, and specific items of personal property—the most important items for the purposes of this appeal being a set of Matco tools and a tool box—on November 26, 2007. The purchase price was $863,060. Conti never visited the property prior to the sale. A local realtor, Marie Hadzima, represented both Morris and Conti in the transaction.

Knopick contends that the $863,060 offer was made in reliance on Morris's statements that the tools and the tool box being sold with the property were worth $150,000. The real-estate contract included a provision for the transfer of a Matco toolbox and tools with a $100,000 value placed on the tools. After the transaction closed, Knopick determined that the tools transferred in the sale were worth significantly less than $100,000.[2]

---

[2] At trial, an expert estimated that the tools and the tool box were worth between $7,000 and $8,000.

Conti sued Morris to rescind the agreement or, alternatively, for damages, claiming that she was supposed to receive a Matco tool box, $150,000 worth of tools, wicker furniture, a washer and dryer, and a nightstand in the transaction. She later amended her complaint, naming Hadzima as a party and suing her for negligence. Additionally, Nickolas Knopick was allowed to intervene as a necessary party.

A bench trial was held on the issues pertaining to the transfer of the tools and the toolbox, At the beginning of the trial, counsel for Knopick announced that Knopick was the real party in interest and that the parties agreed that Knopick would be substituted for Conti. Following the trial, the court prepared and entered a judgment in favor of Knopick and awarded him $92,000 in damages against Morris. The judgment also dismissed Knopick's negligence claim against Hadzima. Both Knopick and Morris timely appealed the trial court's judgment. Our court dismissed the first appeal without prejudice because the trial court's judgment failed to adjudicate issues regarding the transfer of the wicker furniture, the washer and dryer, and the nightstand. *Morris*, *supra*.

Following our court's dismissal of the appeal, the parties returned to the trial court and a supplemental judgment was entered dismissing with prejudice Knopick's claims regarding the wicker furniture, the washer and dryer, and the nightstand. Morris and Knopick timely appealed from the judgment and supplemental judgment. Also following the entry of the supplemental judgment, Knopick filed a motion for new trial that was deemed denied. Knopick filed an amended notice of cross-appeal from the deemed denial. Additionally, Knopick filed a motion for attorney's fees and costs requesting attorney's fees for both the trial work and the work done in the first appeal. The trial court granted the

request for attorney's fees and costs from the trial work, but it refused to rule on the request for work done in the first appeal. Instead, the court directed the attorneys to brief the issue of whether attorney's fees for appellate work was proper and announced that it would rule on this portion of the motion after the briefing was completed. From this order, Knopick filed a second amended notice of appeal to challenge the trial court's denial of his request for attorney's fees and costs for appellate work.

## II. *Issues on Appeal*

On direct appeal, Morris argues that (1) the trial court erred by finding that the parties had a contract and then failing to apply the terms of the contract; (2) there was no justifiable reliance by Knopick or Conti; (3) Morris did not make misrepresentations actionable as fraud; (4) neither Knopick nor Conti suffered damages caused by any alleged misrepresentation, and (5) Knopick is barred from recovery because of unclean hands.

Knopick cross-appeals, arguing that the trial court erred by (1) failing to grant rescission and restitution; (2) failing to find fraud and award compensatory and punitive damages; (3) failing to find Hadzima negligent; (4) denying his motion for new trial; and (5) denying his motion for attorneys' fees and costs for work done in the first appeal.

## III. *Jurisdiction*

As a preliminary matter, we must address a jurisdictional issue raised by Knopick. He contends that this appeal must again be dismissed for lack of finality—this time because the trial court has not adjudicated all of the claims as they pertain to Conti. Specifically, Knopick argues that Conti's rescission claim has not been adjudicated. This argument is without merit. The trial court's judgment disposes of the rescission claim.

Knopick also argues that the trial court improperly substituted him for Conti. This argument is similarly unpersuasive. Knopick first raised this argument in a motion for new trial. An objection first made in a motion for new trial is not timely. *Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007). A party cannot wait until the outcome of the case to bring an error to the trial court's attention. *Id.* at 175, 251 S.W.3d at 267. Here, not only did Knopick fail to challenge the substitution, he agreed to it and his counsel announced the agreed substitution to the court. It is logical that he waived any potential defect regarding his substitution by his consent to proceed with the litigation.

IV. *Morris's Direct Appeal*

With jurisdiction established, we turn to Morris's arguments on direct appeal. Morris challenges several of the trial court's findings, and we evaluate the trial court's findings using a clearly erroneous standard of review. *Poff v. Peedin*, 2010 Ark. 136, 366 S.W.3d 347.

A. A Contract

Morris argues that the trial court erred by determining that he and Knopick had a contract and then by not applying the terms of the contract. First, Morris contends that the trial court erred in finding a contract between Knopick and him. However, the parties agreed to Knopick's substitution for Conti, and with that substitution, Conti's claims became Knopick's to pursue. Additionally, Morris did not develop this argument before the trial court; thus, he is precluded from doing so here. *Kulbeth v. Purdom*, 305 Ark. 19, 805 S.W.2d 622 (1991). Accordingly, we affirm the trial court's finding of a contract.

Determining whether the trial court failed to apply the terms of the contract requires a review of the contract itself. Morris bases his argument on the premise that the contract

provision that the buyer will not rely on any warranties, representations, or statements of the seller controls. However, the contract also includes a specific, handwritten provision stating that the sale included the transfer of a Matco toolbox and tools with a $100,000 value placed on the tools.

It is the duty of the courts to enforce contracts as they are written and in accordance with the ordinary meaning of the language used and the overall intent and purpose of the parties. *Hancock v. Tri-State Ins. Co.*, 43 Ark. App. 47, 858 S.W.2d 152 (1993). "In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled." *RAD-Razorback Ltd. P'ship. v. B.G. Coney Co.*, 289 Ark. 550, 554, 713 S.W.2d 462, 465 (1986). When a contract contains general and specific provisions relating to the same subject, the specific provision controls over more general terms. *Taylor v. Hinkle*, 360 Ark. 121, 200 S.W.3d 387 (2004). We conclude that the provisions of the real–estate contract can be read harmoniously. The alleged value of the tools was reduced to writing and included as a term of the contract. This specific provision controlled over the more general provision that disallowed reliance on representations by the seller. Therefore, we hold that the trial court did not err by failing to apply the contractual provision that the buyer will not rely on any warranties, representations, or statements of the seller.

## B. Justifiable Reliance

Morris also takes issue with the trial court's finding of fraud. In order to establish fraud, there must be (1) a false misrepresentation of a material fact; (2) knowledge that the

SLIP OPINION

representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damages suffered as a result of the reliance. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 66 S.W.3d 568 (2002).

Morris first aims to show that any reliance by Knopick on his alleged misrepresentation of the tools' value was not justifiable. Whether there was justifiable reliance is a question of fact. *Sunbelt Bus. Brokers of Ark., Inc. v. James*, 2009 Ark. App. 659, (citing *Godwin v. Hampton*, 11 Ark. App. 205, 669 S.W.2d 12 (1984)). On appeal, it is our duty to determine whether the trial court's finding is clearly erroneous or clearly against the preponderance of the evidence. *Poff*, *supra*. In our review of the evidence, we are mindful that we must defer to the trial court's evaluation of the credibility of the witnesses. *Minton v. Minton*, 2010 Ark. App. 310, 374 S.W.3d 818.

The evidence established that Knopick was an experienced buyer. He testified he was familiar with tools. Knopick claimed he relied on statements by Morris when purchasing the property, particularly where he was out of state during the negotiations. Knopick recalled that when he had earlier viewed the property, he noticed the large tool box. He said that later, when he was negotiating the purchase of the property, Morris told him there were tools in the tool box worth $150,000 and that the receipts were available. Knopick further claimed he was told most of the tools had "never seen grease." Knopick also testified that Morris offered to bring the receipts for the tools to the closing. Based on all this, he said he trusted and believed Morris when he told him the value of the tools, and he thought no one would be foolish enough to lie to that extreme in a real–estate contract.

SLIP OPINION

Morris's argument for reversal is premised on the idea that an experienced buyer such as Knopick would not have justifiably relied on his statements. *Sunbelt*, *supra*, also involved justifiable reliance, and there we reversed; but *Sunbelt* is distinguishable. In *Sunbelt*, the appellee was a financial-services advisor with extensive accounting experience who entered into a contract to purchase Subway stores. She entered into this contract with the aid of her husband, a CPA who had been the chief financial officer for several other Subway stores and had vast experience in the purchase and sale of businesses. Appellee and her husband testified that, in purchasing the stores, they relied heavily on the cash-flow forms provided to them by appellants. After the purchase, appellee determined that the stores' profits were not as expected and that the cash-flow forms contained errors. She sued for fraud and, ultimately, received a judgment in her favor. Our court reversed that judgment, holding that, based on appellee's and her husband's extensive experience in the areas of accounting, business, and financial matters, which was central to her decision whether the Subway stores were profitable, she could not have reasonably relied on the cash-flow forms.

This case is not similar to *Sunbelt*. Here, there is some evidence that Knopick was experienced in real-estate transactions and had some knowledge about tools because he had his own tools. However, this evidence does not rise to the level of expertise and specialized knowledge that the appellee in *Sunbelt* had. Justifiable reliance is a factual question for the trial court to resolve. Our standard of review is to determine whether the trial court's decision was clearly erroneous. We cannot say it was and affirm on this point.

C.  Misrepresentation

Morris also claims that the trial court erred by finding that he had misrepresented the value of the tools to Knopick.  He advances two primary arguments in support of reversal on this point.

First, Morris argues that he was merely expressing his opinion of the value of the tools and that his opinion is not actionable as fraud.  Fraud cannot be based on an expression of opinion or puffery. *Grendell v. Kiehl*, 291 Ark. 228, 723 S.W.2d 830 (1987).  "Although a statement of opinion is a representation of fact, it is of an immaterial fact, on which the law will not permit the opposing party to rely.  However, when such reliance is regarded as reasonable and permissible, a misstatement of opinion may be a sufficient basis for relief." *Prosser & Keeton, Torts*, § 109, 5th ed. 1984.

During the negotiations, Morris allegedly stated that the tools could sell for an amount over $100,000 and offered to provide receipts for the purchase price of the tools. The trial court's conclusion that this went beyond mere opinion and that it was reasonable for Knopick to rely on this representation is not clearly erroneous.

Morris also contends that the trial court erred by finding he committed fraud because a requirement of fraud is that the party making the misrepresentation must know it to be false or lack a sufficient basis of information to make the representation.  *Goforth v. Smith*, 338 Ark. 54, 991 S.W.2d 579 (1999).

First, Morris argues that the trial court erred in failing to make specific findings that Morris knew his representation was false or that he lacked the knowledge to make it. We easily dispose of this argument because our court presumes, in the absence of a showing to

the contrary, that the trial court acted properly and made the findings of fact necessary to support its judgment. *Arkansas State Bd. of Licensure for Prof'l Eng'rs & Prof'l Surveyors v. Callicott*, 2016 Ark. App. 476, 503 S.W.3d 860.

With regard to the evidence, Morris identifies evidence tending to show that he lacked the requisite state of mind. Specifically, he highlights that his statements about what the tools could be sold for were based on what he paid and that if he had been purposely misleading, he would not have aided Hadzima when she was taking photos of the tools after the closing. We must consider this evidence in the context of the other statements allegedly made during the negotiations. Knopick and Hadzima testified that the transfer of the tools was an integral part of the contract negotiations, and Hadzima testified that both Morris and Knopick told her that the contract would not be effectuated without the inclusion of the tools provision. This evidence demonstrates that it is reasonable to conclude that both parties understood the nature and consequences of the agreement they were signing. Furthermore, we defer to the trial court's evaluation of the credibility of the witnesses. *Minton v. Minton*, 2010 Ark. App. 310, 374 S.W.3d 818. It was not clearly erroneous for the trial court to reach the alternative conclusion.

### D. Damages

In the judgment, the court awarded Knopick $92,000 in damages from Morris by presumably subtracting the value of the tools, as testified about by the expert, from the $100,000 amount included in the real-estate contract.

Morris argues that the trial court's order should be reversed because Knopick did not prove entitlement to damages. We disagree. The real-estate contract provided that Knopick

was to receive $100,000 worth of tools, and the evidence established that he received, at best, only $8,000 worth of tools. Additionally, there is no evidence, other than the passage of time, that the tools decreased in value; nor is there any evidence that they had been tampered with or moved. There is sufficient evidence to indicate that Knopick did not receive the benefit of his bargain, and we conclude that the damages award was not clearly erroneous.

### E. Unclean Hands

In his final argument on appeal, Morris contends that the trial court erred in finding for Knopick because Knopick was barred from recovery because of unclean hands. Morris failed to plead the affirmative defense of unclean hands to the trial court, and the trial court did not rule on it. An appellant is precluded from raising an argument on appeal that was not first brought to the attention of the trial court. *Green v. State*, 265 Ark. 478, 231 S.W.3d 638 (2006). We summarily dispose of Morris's final point on appeal on this basis.

### V. *Knopick's Cross-Appeal*

### A. Rescission

Knopick contends that the trial court erred when it awarded damages rather than rescission of the contract. In its judgment, the trial court found that Knopick had made substantial expenditures and improvements on the house. "Rescission will be granted only when the party asking for it restores to the other party substantially the consideration received; if he cannot do so he is remitted to an action for damages." *Strout Realty, Inc. v. Burghoff*, 19 Ark. App. 176, 186, 718 S.W.2d 469, 474 (1986). With improvements made to the property, it would be difficult, if not impossible, to restore to Morris substantially the



consideration he received. Therefore, we hold that the trial court did not clearly err in awarding Knopick damages.

## B. Fraud

*In* Knopick's second point on appeal, he inexplicably devotes his argument to whether he proved fraud. The trial court found that Morris committed fraud. Regardless of the argument Knopick intended to make, he failed to fully develop any argument in this section. When an argument is not fully developed at the trial level or on appeal, it is not preserved for review. *Omni Holding & Dev. Corp. v. 3D.S.A.*, 356 Ark. 440, 156 S.W.3d 228 (2004). We summarily dispose of this point on appeal.

## C. Claims against Hadzima

Knopick also argues that the trial court erroneously concluded that Knopick did not sustain a negligence claim against Hadzima. Negligence is the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do. *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000). It is a well-established rule that a real-estate broker is under a duty to exercise reasonable care and skill or that degree of care and skill ordinarily employed by persons of common capacity in the same business. *Edwards v. Pennino*, 276 Ark. 380, 635 S.W.2d 246 (1982).

In support of reversal, Knopick focuses on evidence showing that Hadzima did not verify the value of the tools and contends that this demonstrates that she did not exercise appropriate care. We disagree. In its judgment, the trial court found that Hadzima did what was asked and required of her in the transaction. The evidence shows that she strongly



advised against the tools provision that served as the impetus for this litigation. The trial court did not clearly err by finding that Hadzima was not negligent.

### D. The Motion for New Trial

Knopick contends that the trial court erred in refusing to grant a new trial and makes several arguments for reversal on this basis. Specifically, he contends that (1) there was error in substitution, (2) there was error in ruling rescission was not available as a remedy, (3) there was error in failing to award both compensatory and punitive damages, and (4) it was error to find that Hadzima was not negligent.

We easily dispose of Knopick's arguments related to whether there was error (1) in substitution, (2) in ruling rescission was unavailable, and (3) in finding that Hadzima was not negligent. Each of these points has been previously argued by Knopick, and his arguments remain the same.

Knopick's remaining new-trial argument is that the trial court erred by failing to award punitive damages in addition to compensatory damages. Our review of the refusal to award punitive damages is limited to whether there was a manifest abuse of discretion by the trial court. *Bulsara v. Watkins*, 2012 Ark. 108, 387 S.W.3d 165.

Fraud is an intentional tort, and courts *may* award punitive damages for an intentional tort. *Mitchell v. Beard*, 256 Ark. 926, 513 S.W.2d 905 (1974) (emphasis added). The purpose of punitive damages is to punish and deter. *D'Arbonne Constr. Co., Inc. v. Foster*, 354 Ark. 304, 123 S.W.3d 894 (2003). One could easily conclude that the compensatory-damages award was sufficient punishment, and the deterrence element does

not readily apply to these facts.  We hold that the trial court did not abuse its discretion in refusing to award punitive damages.

### E.  Attorney's Fees

As a final point on appeal, Knopick challenges the trial court's refusal to award him attorney's fees for the work done on his behalf in the first appeal.  However, we must dismiss this issue without prejudice.[3]  In the order for attorney's fees, the trial court specifically reserved ruling on the issue of attorney's fees for appellate work.  Without a final ruling on the issue of attorney's fees, we are without jurisdiction to consider it.

Affirmed on direct appeal; affirmed in part and dismissed without prejudice in part on cross–appeal.

ABRAMSON, VAUGHT, and BROWN, JJ., agree.

KLAPPENBACH and HIXSON, JJ., dissent.


KENNETH S. HIXSON, Judge, dissenting.  The majority's conclusion that the paucity of evidence herein was sufficient to prove justifiable reliance is myopic and effectively extirpates "justifiable" from the essential elements of fraud.  I respectfully disagree with the majority's determination that Knopick proved justifiable reliance.  Because justifiable reliance[1] depends on the experience and sophistication of the buyer, below are

---

[3]Attorney's fees are often considered a collateral issue that does not prohibit our court from exercising jurisdiction even if the issue has not been resolved.  *Harold Ives Trucking Co. v. Pro Transp.*, 341 Ark. 735, 19 S.W.3d 600 (2000).  For this reason, we may dispose of all issues in this appeal except for those related to the attorney-fee award.

[1]Before addressing the issue of justifiable reliance, I additionally note that there is also an issue as to whether the representation of the "value of the tools" is a representation of

some excerpts from Knopick's testimony regarding his experience in residential and commercial real estate transactions and the execution of contracts, his determination of value, and his familiarity with tools:

> *I'm no novice* with regard to the buying and selling of real estate; commercial, residential. I've had over *40 years experience buying and selling real estate*, yes. . . . *[I have] bought and sold more than 20 tracts, different tracts, of real estate, yes*. To answer you honestly, *I have experience in signing contracts*. I usually entrust that to either the lawyers that work for me or the realtors that work for me. Well, I had a lawyer on retainer, but not for this. I had – Ms. Hadzima was my representative.
>
> . . . .
>
> And I'm familiar with tools, although — I mean, I've got my own. *It was just value.* I could either keep them, sell them, get rid of them, *but at least the value was there as equity* at some point. Same with the tool box.
>
> . . . .
>
> *No, I never went out to the house and walked through and looked at these things before the sale was concluded.* Yes, my logic is if someone is going to give you receipts, then they're telling the truth basically. [Hadzima] said he brought — or was bringing the receipts down at the closing. And I said, it will not happen without that. And she was well aware of that. That was the whole crux of this offer, was that amount of money. *It was equity to me. It wasn't money, it was equity. It justified my bid.*
>
> . . . .
>
> *No sir, I did not inspect or look at the tools* ever before the purchase — before I concluded the sale. No, *I didn't look at pictures* of the tools. Well, the receipts, yes, I did ask to see those. No, *I never looked at the receipts.* No sir, *I did not send a disinterested third party, — like a Matco representative or someone to go look at the tools and confirm what was important to me, the value.* . . . Somebody signs a contract and says [they're] going to provide receipts, and you say it's what it's worth, *hey, I'll take a shot.*

---

fact. A representation of value is a subjective opinion of the seller. The majority seems to say that because the representation of value was inserted as a term into the contract, it transformed the representation into a fact. If this case was a breach of contract, that might be true. However, because this case is based on fraud, the statement concerning the value of the tools is still a representation of the opinion of the seller.



(Emphasis added.)

And, regarding the extent of Knopick's sophistication and experience in real estate transactions, the record indicates that after he retained Marie Hadzima for this purchase, he retained Ms. Hadzima for another twelve purchases, totaling more than $1,297,000 worth of real estate.

The comment to Restatement (Second) of Torts § 541 (1977) discusses justifiable reliance as follows:

> Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, *he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.* Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.

(Emphasis added.)

As stated in the Restatement comment: a party is required to use his senses and "cannot recover if he *blindly relies* upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." (Emphasis added.) Here, Knopick admittedly was looking only for "equity" in the purchase of the real estate and was not interested in the tools. Knopick never saw the tools, had the tools appraised, or even inspected them. Knopick said he might keep the tools, sell them, or put them on Ebay. In fact, Knopick candidly testified, "Somebody signs

a contract and says they're going to provide receipts, and you say it's what it's worth, *hey, I'll take a shot*." (Emphasis added.) As described in the comment to the Restatement, this is blind reliance. This real estate transaction was an investment opportunity by a sophisticated person who has over 40 years' experience in the real estate business. Knopick stated that when he looked at the tool box for the first time after closing, "I – immediately as soon as I saw this tool box, I realized that it was not worth more than $150,000." Hence, as suggested by the Restatement comment, even the slightest inspection by Knopick would have revealed that the "horse only had one eye."

This case is analogous to *Sunbelt Business Brokers of Arkansas, Inc. v. James*, 2009 Ark. App. 659. While the majority attempts to adroitly distinguish *James*, the attempt is hollow. In *James*, the trial court found that James proved fraud and awarded judgment in her favor. However, we reversed, holding that the trial court's finding that James's reliance was justified was clearly erroneous. *Id.* We explained that James and her husband had extensive experience in accounting, business, and financial services. *Id.* Based on her experience, we agreed with appellants that she could not have reasonably believed the amount of money indicated on Sunbelt's cash-flow form. *Id.* Additionally, we noted that James did not demonstrate the standard of diligence required of a plaintiff alleging fraud and that one has an affirmative duty to make further inquiry into conflicting information. *Id.* Therefore, we held that, based upon the information that James possessed before the sale plus the information she could have received but did not request, her reliance on the cash-flow form was not reasonable and we reversed the trial court's decision. *Id.*

Turning to the case at bar, Knopick is a sophisticated buyer who testified that he was familiar with real estate transactions, contracts, and tools. He had lawyers on retainer and had been buying and selling real estate for more than 40 years. Like the buyer in *James*, Knopick did not demonstrate the standard of diligence required of a plaintiff alleging fraud, nor did he show that he made any affirmative steps to make any inquiry of the representations. The only evidence introduced by Knopick to prove justifiable reliance was his meager statement that he testified that he "thought no one would be foolish enough to lie to that extreme in a real-estate contract." This is not evidence of *justifiable* reliance—perhaps *blind* reliance. Knopick's reliance on Morris's statements as to the value of the tools was not reasonable. Therefore, as this court was in *James*, I am left with a definite and firm conviction that a mistake has been committed and would reverse on direct appeal. By affirming this case, we have effectively abolished the "justifiable" portion of justifiable reliance. All an aggrieved party will have to do to sustain his or her burden of proof is to testify that "[he or she] didn't think anyone would lie to that extreme" and do nothing more.

KLAPPENBACH, J., joins in this dissent.

*Ethredge & Copeland, P.A.*, by: *Johnnie A. Copeland*, for appellant.

*Robert S. Tschiemer*, for appellee.