WAYMOND M. BROWN, Judge
Appellant appeals from the circuit court's order granting the appellees'[1] rescission counterclaim, thereby returning to them their $ 96,000 down payment for the subject property, a gas station. On appeal, appellant argues that the circuit court clearly erred in finding that it committed (1) fraud by omission by failing to disclose (a) unpaid real estate taxes and (b) the real status of the inoperability and disrepair of the gas pumps, and (2) misrepresentation. Additionally, it argues that it properly terminated the contract. We affirm.
On August 30, 2017, appellee Daljit Singh met with Noor Ali as representative for AAN, Inc. (AAN),[2] at the gas station to discuss a potential sale or lease of the same. Singh and Sohail Cheema-who was the assistant to appellant's owner, Mohammad Lone, and the agent for appellant and AAN-met on September 1, 2017. During that time they agreed to the general terms *771 of contract for the sale of the gas station. Singh made an earnest money deposit in the amount of $ 16,000 to appellant, through Cheema, at that meeting.
The parties entered into a contract on September 8, 2017. The gas station was purchased "as it is[.]" It was purchased for $ 640,000 with a down payment of $ 96,000[3] acknowledged as having been received by appellant, thereby leaving a balance of $ 544,000 remaining. The remaining balance was to be paid in installments of $ 4,889.63 monthly through October 1, 2032. One provision in the contract stated:
The [appellees agree] to keep and maintain the premises and the improvements thereon in a clear and orderly condition at all times, free of waste or destruction, and to make all necessary repairs thereon to keep the premises in a good and habitable condition at all times during this contract. The standard of maintenance to which the [appellees agree] to maintain the premises is the highest state of repair, which the same has been or may be at any time during the period of this contract.
A provision on taxes stated that "[t]he Seller agrees to pay all taxes that come from this contract date forward for the year 2017 on the aforesaid property, and the Buyer agrees that the Buyer will pay the taxes for all subsequent years thereon." The contract's default provision stated that:
In the event that the Buyer should default in making the payment or in keeping the covenants on Buyer's part to be made and kept hereunder, and should a default in the making of any payment continue for a period of thirty (30) days from the date when such payment hereunder is due, the Seller may, at Seller's option, declare this contract to be thereupon terminated and forfeited by giving notice of Seller's election so to do to the Buyer at Buyer's telephone book or last known address. Thereupon, Buyer agrees that Buyer will promptly and forthwith vacate the premises and return possession thereof to the Seller without additional notice. To accommodate the agreement herein made to that effect, the Buyer hereby waives any and all notice to which Buyer may be entitled under the Laws of the State of Arkansas as a prerequisite to a suit against the Buyer for the unlawful detention of the property. Upon such a default by the Buyer and an election of the Seller to terminate this contract, the amounts theretofore paid by the Buyer to the Seller shall be retained by the Seller as liquidated damages for the breach of this agreement by the Buyer and as a reasonable rental for the property during the period of time when the same has been occupied pursuant to this contract by the Buyer.
On February 8, 2018, appellant filed a complaint in unlawful detainer asserting that it received appellees' last payment in November 2017, and that appellees had since "unlawfully failed and refused to quit possession" of the property despite being requested to do so. It also asserted that appellees had failed to operate its business in a proper manner. Accordingly, appellant sought monetary damages in the form of payment of the monthly installments for all months appellees remained in possession of the property. Appellant also sought reimbursement of taxes it had to pay on the property that it asserted appellees were responsible for and a writ of possession.
The appellees filed a counterclaim on March 16, 2018. The following facts were *772 asserted therein. At a September 2, 2017 visit to the gas station, Singh learned that gasoline was unavailable for sale at the gas station because the gasoline distributor had "cutoff" gas distribution for "several months due to various issues including the condition of the gasoline storage tanks and gas pumps." Singh "immediately" contacted appellant and requested the return of his earnest money, but was assured by Cheema that "all gasoline and equipment issues would be addressed to Singh's satisfaction[;] Cheema would not return the earnest money[.]" On September 7, 2017, Singh met with Lone who verbally assured Singh that appellant would install new gasoline tanks and pumps within two months. Regarding operation of the gas station:
On October 8, 2017, [DJ Mart,] LLC began operation and management of the convenience store. The monthly payment from LLC to [appellant] was made on October 4, 2017. LLC accepted deliveries of gasoline from the Citgo petroleum supplier although only one tank of the four on the property could hold gasoline. LLC was waiting on the two-month period [appellant] represented would be required in order to replace the damaged or unserviceable equipment.
On November 15, 2017, DJ Mart, LLC (DJ Mart), contacted Lone concerning replacing and/or repairing the equipment, for which DJ Mart had obtained an $ 85,000 estimate. Appellant, through Lone, denied having agreed to repair or replace the equipment. Singh, on behalf of DJ Mart, demanded that appellant "fulfill its contractual obligation to provide tank replacement/repair and pump replacement." Appellant refused. Singh, again on behalf of DJ Mart, requested repayment of the $ 96,000 down payment and rescission of the contract; appellant refused.
Thereafter, on or about December 15, 2017, DJ Mart received notice that the gas station was delinquent in payment of taxes for the years 2013 through 2015, totaling $ 21,507.24. The property was scheduled to be sold at public auction on April 10, 2018. Singh contacted Cheema regarding the notice and was advised that appellant would pay the delinquency. Singh advised that no further payments would be made until the delinquency was paid, asserting that the delinquency was a default under the contract. DJ Mart had already made its December payment by the time it received the notice and appellant had cashed that payment. No additional payments were made.
Appellees asserted that appellant "[at] no time" advised that it intended to terminate the contract and appellees denied that appellant ever made a demand that DJ Mart vacate the property. Appellees filed an objection upon receipt of appellant's complaint and deposited payment for the months of January, February, and March with the clerk of the court.
Based on these asserted facts, appellees counterclaimed for fraud stating that all gasoline storage tanks and gas pumps being "in good working order" was an issue "critical to the buying decision" of appellees "as the cost for repair or replacement of the gas tanks and fuel pump together with any environmental damages associated with the equipment would be a substantial expense."[4] At the time of the complaint, taxes were still outstanding and sale of the property at public auction was still scheduled. Appellees therefore asserted they were entitled to rescission of the *773 contract and monetary damages, including return of the down payment and reimbursement of $ 4,900 spent to repair damage to the roof. Appellees also answered appellant's complaint on March 16, 2018, requesting that appellant's complaint be dismissed.
The circuit court entered an order on March 19, 2018, pursuant to the agreement of the parties, ordering appellees to surrender possession of the property on or before March 31, 2018. A writ of possession was ordered to be issued by the clerk of the court on or after April 2, 2018, at the request of appellant. The funds appellees had previously deposited with the clerk of the court-$ 15,646.81-were ordered to be paid over to appellant immediately.
On March 26, 2018, appellant answered the appellees' counterclaim asserting that paragraph six of the contract obligated appellees to maintain and repair the premises and improvements thereon. It then stated that "[t]he contractual agreement of DJ Mart, LLC to maintain the premises and improvements thereon was subsequent to the alleged fraudulent representations in the complaint, and precludes finding a fraud or misrepresentation on the part of [appellant]." It then went on to affirmatively state that the contract represents the entire agreement between the parties and asserted that appellees breached the contract first. It sought dismissal of the counterclaim.
A hearing in the matter was held on September 4, 2018, following which the circuit court entered an order on September 10, 2018. The order noted that appellant "stipulated that it was not seeking any additional damages" from appellees since the entry of the circuit court's March 19, 2018 order. Appellant also stipulated that it had "no cause of action against the individual defendant, Daljit Singh," and therefore sought that Singh be dismissed from the suit with prejudice.
The circuit court noted that it ordered the sale of the subject property at the conclusion of all evidence and testimony at the September 4, 2018 hearing in order to determine the value, if any, of DJ Mart's "equitable title acquired pursuant to" the contract entered into between the parties. It then made the following findings:
7. After further review of its trial notes concerning the testimony presented, the exhibits introduced into evidence, and the pleadings, the court has concluded that the defendant DJ Mart, LLC has more than met its burden for rescission and that granting such relief will be the remedy that is the least disruptive to the rights of the present Lessee of the subject real property. Such person/entity is not a party to this action.
8. It is clear from the totality of the evidence that the [appellant]'s agents engaged in active fraud, both by omission and commission, with respect to material representations concerning the subject real property. It is also clear that on several occasions, from the very inception of the contract between the parties, the defendant requested rescission and the [appellant] continued to lie and weasel its way out of returning the defendant's down payment.
9. Such material and fraudulent misrepresentations and omissions include but are not limited to: (a) failing to disclose that the [appellant] had failed and refused to pay at least three years [sic] worth of real property taxes, in excess of $ 20,000.00, and that the subject real property was about to be sold for nonpayment of taxes, (b) failing to disclose the real status of the inoperability and disrepair of the gas pumps, and (c) the [appellant's] repeated lies that within two months it would repair both the gas *774 tanks and the gas pumps at its own cost and expense.
10. It is clear from the subsequent lease of the subject real property that the [appellee] DJ Mart, LLC was paying a monthly rate that was in excess of the reasonable rental value of the subject real properly.
11. If the court had not granted the [appellee]'s request for rescission it would have ordered the subject real property sold in order to determine the value, if any, of the [appellee] DJ Mart, LLC's equitable interest in the real property.
Then, noting appellant's failure to present any additional evidence or testimony for any further relief, the circuit court dismissed appellant's complaint with prejudice, awarded a $ 96,000 judgment as the return of its original down payment price to appellee DJ Mart on its rescission counterclaim, and denied DJ Mart's request of a return of the $ 4,900 it spent on a new roof for the subject property. This timely appeal followed.
In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence.[5] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed.[6]
The parol-evidence rule, which is a substantive rule of law rather than a rule of evidence, prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement.[7] Its premise is that the written agreement itself is the best evidence of the intention of the parties.[8] In the absence of fraud, accident, or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings, and verbal agreements on the same subject.[9]
Appellant argues that the circuit court clearly erred in finding that it committed (1) fraud by omission by failing to disclose (a) unpaid real estate taxes and (b) the real status of the inoperability and disrepair of the gas pumps, and (2) misrepresentation. We necessarily address these two arguments together as misrepresentation is a method of committing fraud.
In order to establish fraud, as asserted here, there must be (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damages suffered as a result of the reliance.[10] These elements must be established by clear, strong, and satisfactory proof.[11]
*775 The basic facts before us are that the parties entered into a contract for the sale of a gas station from appellant to the appellees. The contract is the only documentation before us; all other evidence is testimonial. Appellant's arguments rely mainly on the terms of the contract, while the appellees' arguments-upon which the circuit court necessarily made its ruling-relied totally on Singh's testimony.
According to Singh, at multiple points prior to signing the contract and thereafter, appellant-through its agent-promised to provide new pumps within two months of the contract date. Singh asserted that this induced him to sign the contract. Singh also asserted that appellant failed to disclose its tax liability and the "real status" of the gas pumps. Singh expressly stated that he would not have entered into the contract had he known the latter fact. The circuit court expressly found the above-referenced statements and omissions to be "material and fraudulent misrepresentations and omissions." Whether these alleged conversations occurred are matters on which the circuit court apparently found Singh to be credible; this court does not disturb credibility determinations.[12]
We acknowledge that a fraudulent representation by one party to another must relate to a past event or present circumstance; projections of future events or conduct cannot support a fraud claim as a matter of law.[13] However, an exception to the "future events" rule arises if the promisor, at the time of making the promise, has no intention to carry it out.[14] The circuit court's reference to appellant's statements promising to buy new pumps as material and fraudulent in addition to appellant's ultimate denial that it ever made such statements support appellant's lack of intent to carry out the statement-a promise-that the court found it made.
Appellant's final argument is that it properly terminated the contract. It is not clear that this argument was made below. When an argument is not raised in the circuit court, it is not considered on appeal.[15] However, to the extent that this argument can be found to have been raised below, appellant did not obtain a ruling. Failure to obtain a ruling on an issue constitutes waiver of the issue on appeal.[16]
Affirmed.
Virden and Murphy, JJ., agree.

At the beginning of the trial, appellant stated that while there was a claim against Daljit Singh in his individual capacity, appellant was not pursuing the claim because Singh was not a party to the contract and it was not seeking damages. Despite this assertion, we note that Singh did sign the contract with no designation that he was signing on behalf of DJ Mart, LLC. Furthermore, both Singh and DJ Mart, LLC, were listed as "Buyer."

At the time, AAN was the lessee of the gas station from appellant, who was the lessor.

Singh paid $ 80,000 in addition to the $ 16,000 he had previously paid appellant.

Appellees stated that "[o]n September 3, 2017, [DJ Mart] through Singh learned the convenience store did not have access to gasoline and petroleum products in large measure because three of the four tanks were unfit for gasoline storage and would require significant repair."

Waddell v. Ferguson Home Builders, LLC , 2017 Ark. App. 66, at 5, 513 S.W.3d 271, 275 (citing Tadlock v. Moncus , 2013 Ark. App. 363, 428 S.W.3d 526 ).

Id.

Hurt-Hoover Invs., LLC v. Fulmer , 2014 Ark. App. 197, at 7, 433 S.W.3d 917, 922, (citing First Nat'l Bank of Crossett v. Griffin , 310 Ark. 164, 168, 832 S.W.2d 816, 818 (1992) ).

Id. (citing Griffin , 832 S.W.2d at 818-19 ).

Lee v. Bolan , 2010 Ark. App. 209, at 13, 374 S.W.3d 718, 726 (citing Ultracuts Ltd. v. Wal-Mart Stores, Inc. , 343 Ark. 224, 33 S.W.3d 128 (2000) ).

Morris v. Knopick , 2017 Ark. App. 225, at 6-7, 521 S.W.3d 495, 501 (citing Tyson Foods, Inc. v. Davis , 347 Ark. 566, 66 S.W.3d 568 (2002) ).

Lone v. Koch , 2015 Ark. App. 373, at 5, 467 S.W.3d 152, 156.

See Morris , 2017 Ark. App. 225, at 7, 521 S.W.3d at 501 (citing Minton v. Minton , 2010 Ark. App. 310, 374 S.W.3d 818) ("In our review of the evidence, we are mindful that we must defer to the trial court's evaluation of the credibility of the witnesses.").

Victory v. Smith , 2012 Ark. App. 168, at 2, 392 S.W.3d 892, 894 (citing Se. Distrib. Co. v. Miller Brewing Co. , 366 Ark. 560, 237 S.W.3d 63 (2006) ; S. Cnty., Inc. v. First W. Loan Co. , 315 Ark. 722, 871 S.W.2d 325 (1994) ).

Trakru v. Mathews , 2014 Ark. App. 154, at 10, 434 S.W.3d 10, 17 (citing Delta Sch. of Commerce v. Wood , 298 Ark. 195, 766 S.W.2d 424 (1989) ; Hobson v. Entergy Ark., Inc. , 2014 Ark. App. 101, 432 S.W.3d 117 ; Stine v. Sanders , 66 Ark. App. 49, 987 S.W.2d 289 (1999) ).

Miller v. Transamerica Commercial Fin. Corp. , 74 Ark. App. 237, 244, 47 S.W.3d 288, 293 (2001) (citing Luedemann v. Wade , 323 Ark. 161, 913 S.W.2d 773 (1996) ).

Patton Hosp. Mgmt., LLC v. Bella Vista Vill. Coopershares Owners Ass'n, Inc. , 2016 Ark. App. 281, at 6, 493 S.W.3d 798, 803 (citing Gatlin v. Gatlin , 306 Ark. 146, 811 S.W.2d 761 (1991) ).