2009 Ark. App. 849

**Cliff PRICE and Linda Price, Appellants**

v.

**Walter WILLBANKS and Jerrie L. Willbanks, Appellees.**

**No. CA 09–226.**

Court of Appeals of Arkansas.

Dec. 16, 2009.

The Henry Firm, P.A., Little Rock, by: Matthew M. Henry, for appellants.

Lightle & Raney, LLP, Searcy, by: Donald P. Raney, for appellees.

LARRY D. VAUGHT, Chief Judge.

Appellants Linda and Cliff Price argue two main points on appeal in this land-sale case. First they claim that the trial court erred in its decision to admit the testimony of an expert witness for appellees Jerrie and Walter Willbanks who was not identified during the discovery; second they argue that the trial court erred in its conclusion that the writing was an enforceable land contract. We see no reversible error and affirm the decision of the trial court.

This case involves a written agreement entered into by the parties concerning a tract of real property. According to the Prices, on February 23, 2005, they entered into preliminary negotiations to sell a portion of their land to the Willbankses. The Prices claim that their "hastily drafted" agreement merely "memorialize[d] the privilege of the Willbankses to come onto [the Prices'] property [to care for the Prices' horses] as well as the future intent of the Prices to possibly sell land to the Willbanks[es]." The Willbankses claim that the contract was not preliminary in nature and that it did in fact memorialize the land-sale agreement between the two parties. The writing[1] in question states:

LAND CONTRACT

THIS CONTRACT IS BETWEEN WALTER AND JERRY WILLBANKS & CLIFF AND LINDA PRICE

I CLIFF AND LINDA PRICE BOUGHT 30.24 ACRES FOR 60,000.00 DOLLARS, PAYMENTS 600.00 (595.00) DOLLARS A MONTH.

WALTER WILLBANKS AND JERRY WILLBANKS WHO TAKE'S CARE OF OUR LIVE STOCK (HORSES).

WILL HAVE TO MOVE ON THE 30.24 ACRES IN ORDER TO RUN THE RANCH..

THEY WILL BE BUYING 15 ACRES OF SAID LAND..THEY WILL BE BUYING THE AREA MENTION IN THIS CONTRACTOR WHICH IS

THE FRONT HALF OF THE PROPERTY NORTH/SOUTH WITH GRAND AVE..WITH EAST/WEST HARTZEL LAND AND EAST/WEST OF GRIFFITH LANE ... ADDRESS IS 502 SOUTH GRAND MCRAE, AR.

WE THE OWNER AND SELLER CLIFF AND LINDA PRICE WILL BE SELLING TO THE BUYER WALTER AND JERRY WILLBANKS

THE SAID 15 ACRES FOR 300.00 PER MOTH (handwritten notation of "$30,000 total"), IF THEY DEFAULT ON PAYMENTS AFTER 90 DAYS IT WILL BE RETURNED TO THE

SELLER WHICH IS CLIFF AND LINDA PRICE ... IN THE EVENT OF UNFOR SENT PROBLEM CODY WILLBANKS CAN COMPLETE..THIS CONTRACT..

THIS IS JUST A ROUGH DRAFT..INCASE SOMETHING HAPPENS TO

---

1. The writing is reproduced—verbatim—as drafted by the Prices.

THE OWNER.. WALTER AND JERRY WILLBANKS WILL BE PERTECTED..

SIGN: CLIFF PRICE      DATE 2–23–2005
SIGN: LINDA PRICE      DATE 2–23–2005
SIGN WALTER WILLBANKS      DATE 2–23–2005
SIGN JERRIE WILLBANKS      DATE 2–23–2005

On July 18, 2007, the Prices filed an action for ejectment and unlawful detainer against the Willbankses. On November 7, 2007, the Prices filed a motion for summary judgment asserting that the writing was not a land contract because it lacked a legal description of the real property and was missing essential terms. Following a hearing in October 2008, the trial court ruled that the proof did not support a writ of prohibition (as ultimately requested by the Prices). The Willbankses filed a counterclaim for declaratory judgment and specific performance on October 13, 2008.

A hearing on the Willbankses' counterclaim was scheduled for November 24, 2008. At this hearing, the Willbankses called surveyor Kenneth Hazlewood as an expert witness to testify about how he used the property description in the writing to perform a survey on the fifteen acres of property. The Prices objected to the witness being called, claiming that they were not put on notice of his testimony through discovery. The trial court allowed the testimony but afforded the Prices a recess to become familiar with the survey that Hazlewood had prepared. On December 8, 2008, the trial court issued an order granting the Willbankses the relief they requested. That order is the subject of this timely appeal.

■ At the outset we note that this case was heard as a bench trial, so we must consider only whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Crooked Creek III, Inc. v. City of Greenwood*, 352 Ark. 465, 101 S.W.3d 829 (2003). Further, when there is testimony in conflict on the issue of whether the parties agreed to the terms of a contract, a factual question arises that is to be determined by the trial court. *Country Corner Food & Drug, Inc. v. Reiss*, 22 Ark.App. 222, 227, 737 S.W.2d 672, 674 (1987). And, a factual finding will not be reversed so long as there is evidence to support the trial court's finding. *Id.*, 737 S.W.2d at 674.

■ We first consider the Prices' primary point on appeal—the validity and effect of their self-titled "Land Contract." They argue that the document was not a contract; the Willbankses counter that it was. These converse positions are both predicated on a mutual understanding of Arkansas law requiring that a contract include these essential elements: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Simmons v. Simmons*, 98 Ark.App. 12, 15, 249 S.W.3d 843, 846 (2007). The Prices argue that the contract is void because it did not reflect a mutual agreement. In support of their argument, the Prices claim that the writing was not a contract because it did not include an interest rate, did not mention performing a survey, and did not mention the payment of taxes. They also argue that their use of future-tense language ("we will be selling" and "they will be buying") and the phrase "[t]his is just a rough draft..incase something happens to the owner. Walter and Jerry Willbanks will be pertected" is proof that they did not manifest an intent to contract for the sale of the land. In response, the Willbankses testified that they believed they were buying the property and would receive title once they paid the $30,000 by virtue of their $300 monthly payments.

■ We believe that the trial court's resolution of the matter was both logical and consistent with the common principles

of installment-land contracts. Our law does not favor the destruction of contracts because of uncertainty, and courts—when possible—are to construe a contract in a manner that gives effect to the reasonable intentions of the parties. *Dziga v. Muradian Bus. Brokers, Inc.,* 28 Ark.App. 241, 245, 773 S.W.2d 106, 107 (1989). Here, the precise language of the "Land Contract" includes the following substantial provisions: (1) the names of all parties involved, (2) the payment method, (3) the intent to sell the "front half" of the original tract to the Willbankses, (4) a detailed description of the fifteen acres to be sold, (5) the price per month and the total purchase amount to be paid by the Willbankses,[2] (6) a provision for breach and termination of the contract, and (7) the dated signatures of all the parties involved. There is no doubt that the writing contains sufficient mention of the terms and conditions of the sale, the price to be paid, and the time for payment as required by our laws. *See Van Dyke v. Glover,* 326 Ark. 736, 743, 934 S.W.2d 204, 208 (1996).

However, the writing must also contain a property description that is adequate to satisfy the statute of frauds; but if a writing furnishes a means by which the realty can be identified, it need not describe the property with the particularity required for deeds. *Boensch v. Cornett,* 267 Ark. 671, 674, 590 S.W.2d 55, 57 (Ark. App.1979). Further, although extrinsic evidence may not be used to add or change a deficient description, it may be used to decipher or make intelligible the terms of the contract so long as the writing itself provides the key to the description. *Id.,* 590 S.W.2d at 57. Here, the Prices' description of the property contains a particular address located in a particular town in the state of Arkansas, which is the only tract of land that could be the subject matter of the agreement. It also describes the streets that border the property and the particular area ("front half") of the property at that address. As such, because the key to the description was contained in the "Land Contract" itself, the trial court properly used the legal description of the Prices' warranty deed as extrinsic evidence to make the terms of the contract both intelligible and satisfactorily precise to satisfy the statute of frauds.

As to the Prices' claim that the contract fails for lack of mutuality, our laws require that if uncertainty or ambiguity exists within the terms of a contract, or if it is susceptible to more than one reasonable construction, then the courts must construe the contract most strongly against the party who drafted it. *Elcare, Inc. v. Gocio,* 267 Ark. 605, 608, 593 S.W.2d 159, 161 (1980). In this case, arguably, the Prices' future-tense language coupled with the "rough draft" disclaimer created an ambiguity as to whether a second document was anticipated or forthcoming. However, no subsequent document was drafted and the parties' "Land Contract" was not rescinded. In fact, both parties operated and executed under the stated contract terms. As such, any ambiguity about whether the future-tense language meant either that another writing was anticipated or that title would be tendered at a future date (after payment in full) must be construed against the drafters—the Prices. There are other indicators suggesting a manifestation of mutual assent—the title of the document, the essential terms contained in the writing, and the conduct and acts of the parties in

---

**2.** It is worthy of note that this amount is exactly half of the price paid per month and half of the total purchase price paid by the Prices when they purchased the original 30.24–acre tract.

performance of the contract for multiple, consecutive years. As such, because the decision of the trial court was neither clearly erroneous nor clearly against the preponderance of the evidence, we affirm.

 The Prices also argue that they were prejudiced by the Willbankses' failure to disclose their surveyor as an expert witness. Certainly Arkansas Rule of Civil Procedure 26(e)(1) imposed a legal duty on the Willbankses to supplement their discovery responses relating to the surveyor's testimony. "A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Ark. R. Civ. P. 26(e). The Willbankses acknowledge their Rule 26 duty to supplement (and concede their breach of duty) but argue that their failure to supplement did not prejudice the Prices.

We are persuaded by the argument. Although inadequate discovery responses can amount to an act of "constructive fraud," the facts of this case did not produce a prejudicial result. *See Battles v. Morehead,* 103 Ark.App. 283, 288–89, 288 S.W.3d 693, 697–98 (2008). Here, the testimony of the undisclosed witness involved an issue that was ancillary to the main question before the court—whether a land-sale contract existed. Furthermore, the trial court did not utilize the survey in deciding whether the property description contained in the writing was sufficiently precise for the writing to qualify as a valid land-sale contract under the statute of frauds. Rather, the trial court used the evidence relating to Hazlewood's survey of the property to prepare its order of declaratory judgment and specific performance

after it concluded that the "Land Contract" was in fact a valid contract for the sale of land. Additionally, the Prices were given an opportunity to review the survey during trial. In sum, although the Willbankses failed to comply with our discovery rules, because no prejudice resulted, we affirm on this point.

Affirmed.

GLOVER and MARSHALL, JJ., agree.