2013 Ark. App. 363

Iline TADLOCK, Appellant

v.

Randy MONCUS, Administrator of the Estate of Peggy Stewart, Deceased, Appellee.

No. CV–12–888.

Court of Appeals of Arkansas.

May 29, 2013.

Steel & Steel, by: G. Nathan Steel; and Reece Moore Pendergraft LLP, Fayetteville, by: Larry McCredy, for appellant.

Jana Bradford, for appellee.

KENNETH S. HIXSON, Judge.

Iline Tadlock brings this appeal from a judgment in favor of Randy Moncus, the administrator of the estate of his mother, Peggy Stewart, in the amount of $43,200 in a suit on a debt. We affirm the circuit court's judgment.

Iline Tadlock and Peggy Stewart were lifelong friends and sisters-in-law.

In January 2000, Tadlock wanted to purchase a portion of the family farm but lacked the funds to do so. Stewart provided Tadlock with $60,000 to purchase the property. Tadlock used the $60,000 to consummate the purchase. Stewart passed away on October 17, 2008. Stewart's son, Randy Moncus, was appointed administrator of the estate.

Shortly after Stewart's death, Randy Moncus and his wife, Diane Moncus, started going through the Stewart's personal effects. They found a handwritten document in Stewart's wallet that was prepared by Tadlock, and they found a receipt book that indicated that Tadlock had made $200 monthly payments to Stewart between 2001 and 2007.

On August 30, 2010, the administrator of Stewart's estate filed a complaint asserting that the $60,000 transaction was a loan and seeking payment of the balance. Attached to the complaint was the handwritten document that Tadlock had prepared that was discovered in Stewart's wallet.

Tadlock, acting pro se, answered the complaint and asserted that the $60,000 was a gift from Stewart. She also asserted that the $200 monthly payments she had made were for Stewart's medical-insurance premiums. Tadlock further asserted that the written document was not a promissory note; rather, she contended that it was a letter of instructions in case she was killed while on vacation. After retaining counsel, Tadlock amended her answer to deny all of the allegations of the complaint.

At the conclusion of the bench trial, the circuit court requested briefs regarding whether the statute of frauds was applicable to the case. After the parties filed their briefs, the circuit court issued its letter opinion on June 11, 2012. The court found that the statute of frauds did not

apply because it was clear that the intent of Stewart and Tadlock was to enter into a contract whereby Stewart would loan Tadlock $60,000 and Tadlock would repay it at the rate of $200 per month. The court found that the testimony provided by Moncus's witnesses concerning the agreement was credible while that provided by Tadlock's witnesses was not. The court specifically noted that Tadlock's testimony that the money was given to ⌊₃her as a gift and her $200 monthly payments for approximately seven years to Stewart for insurance was not believable.

The court further found by clear and convincing evidence that even if the statute of frauds did apply, not only was there an oral agreement between the parties, but also that Stewart fully performed by extending the loan to Tadlock, and that Tadlock had made part performance by making payments from October 2001 until October 2008. The court then awarded judgment to Moncus in the amount of $43,200. The court declined to award attorney's fees to Moncus.

On July 8, 2012, prior to the entry of judgment, Tadlock filed a motion seeking findings of fact and conclusions of law. The motion sought answers to fourteen specific questions. The circuit court did not rule on the motion. This appeal followed the entry of the court's judgment on July 16, 2012.

■ In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Rooke v. Spickelmier*, 2009 Ark. App. 155, 314 S.W.3d 718. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.*

■ For her first point on appeal, Tadlock argues that the circuit court erred in not making adequate findings of fact. We are not able to address her argument because this issue is not preserved for appeal. Tadlock filed a posttrial motion asking the circuit court to make findings on several specific questions. The circuit court did not take action on this motion within ⌊₄the thirty-day window allowed by Rule 4(b)(1) of the Arkansas Rules of Appellate Procedure—Civil, and in accordance with that rule, the motion was deemed denied at the expiration of the thirty-day period. Tadlock's notice of appeal did not mention that an appeal was being sought from the deemed-denial of the motion for findings of fact and conclusions of law. Our rules state that a notice of appeal shall "designate the judgment, decree, order or part thereof appealed from." Ark. R.App. P.-Civ. 3(e)(ii). The failure to mention the deemed-denial of a posttrial motion in a notice of appeal precludes appellate review of the issue. *Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 385 S.W.3d 822. Therefore, the question of whether the circuit court should have granted the motion for findings and conclusions of law is not properly before us. *See, e.g., Vibo Corp. v. State ex rel. McDaniel*, 2011 Ark. 124, 380 S.W.3d 411.

■ Tadlock next argues that the court erred in finding an oral agreement existed between Tadlock and Stewart. The circuit court found the parties'. clear intent to be a loan of money from Stewart to Tadlock, to be repaid at the rate of $200 per month. We cannot say that the circuit court was clearly erroneous in such a finding. Moreover, this finding was corroborated by the handwritten document Tadlock prepared to memorialize the agreement. The document states that Tadlock "borrowed" $60,000 from Stewart to purchase "the properly, house and barn from Nickey and

Barbara Stewart on January 21, 2000. Description enclosed." The document contains a description of the properly by referring to the parcel number, section number, and acreage. It also contains Tadlock's promise to pay, although it does not specify the amount of each monthly installment. It contains a provision that the property should be "delivered back to Peggy Stewart unless Perry Buster or Joy Tadlock should desire to pay off or continue payment on the property." The document uses the term "default," which is usually associated with an obligation to pay. Another section provides that Stewart should "take over" or reclaim the property if Tadlock defaults. The document also sets out Tadlock's obligation to insure the house and barn.

Tadlock testified that she was the author of the handwritten document and that she used the language "Iline Tadlock borrowed $60,000 from Peggy Stewart" in the document. Tadlock testified that she did not mean to use the word "borrow"; however, she did not provide any other explanation. Tadlock also testified that she obtained employment approximately one year after she received the deed to the family farm, and at that time, she began making payments to Stewart in the amount of $200 per month. Tadlock testified that she made eighty-four monthly payments. Tadlock testified that these eighty-four payments were for Stewart's monthly medical-insurance premiums and not in repayment of the loan.

■ A circuit court can give considerable weight to the construction that the parties themselves give to an ambiguous agreement, as evidenced by their subsequent statements, acts, and conduct. *RAD–Razorback Ltd. P'ship v. B.G. Coney Co.*, 289 Ark. 550, 555, 713 S.W.2d 462, 466 (1986); *Wynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 341, 493 S.W.2d 439, 445 (1973). Here, the court could look at the document and the language Tadlock used in drafting the document, together with the fact that Tadlock made eighty-four payments of $200, and reasonably conclude that the document constituted an agreement for the loan of money from Stewart to Tadlock. The only explanation Tadlock offered for the payments was that she was paying Stewart's medical-insurance premiums—an explanation that the circuit court did not find credible. Where the pivotal issue is the credibility of interested parties whose testimony is in direct conflict, we defer to the circuit court's determination. *Carpenter v. Layne*, 2010 Ark. App. 364, 374 S.W.3d 871.

■ Tadlock next argues that even if an oral contract was formed, it is unenforceable under the Arkansas statute of frauds. Tadlock argues that *any* contract involving real property must be in writing to satisfy the statute of frauds. We disagree and find that argument is overly broad. Our supreme court has held that an oral agreement for the repayment of money is not within the statute of frauds, even if that money was used to purchase an interest in real property, where there was no evidence that the agreement was intended as a mortgage. *Miles v. Scales*, 174 Ark. 412, 295 S.W. 375 (1927). Here, there were no allegations that the handwritten document was ever intended as a mortgage. Therefore, the statute of frauds does not apply in this case simply because the agreement between the parties allegedly concerned real estate.

Further, the circuit court correctly relied on *Talley v. Blackmon*, 271 Ark. 494, 609 S.W.2d 113 (1980), and *Cobb v. Leyendecker*, 89 Ark.App. 167, 170, 200 S.W.3d 924, 926 (2005). In *Talley*, we held that full performance by one party in extending a loan and part performance on the part of the other party by making payments on a loan operated to take the oral agreement

out of the statute of frauds. And, in *Cobb*, we held that it is settled law that an oral agreement can be taken out of the statute of frauds if the making of the oral contract and its performance is proven by clear and convincing evidence. Here, the circuit court ₇specifically found by clear and convincing evidence that Stewart had made full performance by extending the loan to Tadlock and that Tadlock had made part performance to Stewart by making payments. Therefore, this oral agreement was not subject to the statute of frauds.

■■■ For her fourth point, Tadlock argues that the receipt book was improperly admitted into evidence over her hearsay objection. On appeal, we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion, nor will we reverse absent a showing of prejudice. *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795.

At trial, Diane Moncus, Stewart's daughter-in-law, testified that she found receipts in a receipt book located in Stewart's chest of drawers in her bedroom. Tadlock objected on the basis that the writings in the receipt book were "self-serving hearsay." Further objection was made on the basis that the receipt book could not be authenticated as being in Stewart's handwriting. After Moncus argued that the receipt book was admissible under the business-record exception to the hearsay rule, the circuit court overruled the objection. When appellee tried to introduce the receipt book into evidence, Tadlock again objected on the same grounds, as well as the additional objection that the handwriting in the book changed over time. After the court queried whether the testimony concerning authenticity went to the weight rather than the admissibility, Tadlock stated that the objection was based on authenticity. The court overruled the objection and admitted the book into evidence. Diane Moncus continued her testimony, stating that she recognized the handwriting on the receipts as being in Stewart's handwriting, which did not change over time. She also said that the receipts documented payments of $200 made regularly every month, except for a few months ₈that were skipped, from 2001 to 2007. She read the last entry in the book as saying "end of '07, owe Iline 45,000."

There is no reversible error in the admission of the receipt book because Tadlock suffered no prejudice. Tadlock admitted that she made $200 per month payments to Stewart from October 2001 until Stewart's death, albeit asserting that they were payments for Stewart's insurance premiums. Moncus agreed that the circuit court could accept Tadlock's testimony as to the number of payments. Based on Tadlock's testimony, the court found the balance to be $43,200 instead of $45,000 as reflected in the receipt book. Because Tadlock has not shown she was prejudiced, we will not reverse.

■■■ Tadlock also argues that the court erred in accelerating the balance due on the contract because neither the oral agreement nor the handwritten document contained an acceleration clause. However, Tadlock did not make this argument before the circuit court, and, therefore, it is not preserved for review. Moreover, Tadlock's acknowledgment of the debt in her handwritten document created an enforceable obligation that implied a valid consideration and promise to repay on demand. *Anderson v. Pearce*, 36 Ark. 293 (1880); *Carpenter v. Schneider*, 22 Ark. App. 184, 737 S.W.2d 656 (1987).

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.