Cite as 2019 Ark. App. 579

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-17-893

| | | |
|---|---|---|
| MARGARET ELLIS | | **Opinion Delivered:** December 4, 2019 |
| | APPELLANT | |
| V. | | APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. 19CV-08-75] |
| ROGER THOMPSON AND FRANCES THOMPSON | | |
| | APPELLEES | HONORABLE CHALK MITCHELL, JUDGE |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

This is a dispute between siblings over their late father's estate. Appellant Margaret Ellis sued her brother and sister-in-law, appellees Roger Thompson and Frances Thompson, for an accounting, to set aside certain gifts allegedly made to Roger, and for various torts arising out of Roger's alleged mishandling of the property of Edward Thompson, the now deceased father of Margaret and Roger, as a signatory on Edward's bank accounts, and under a power of attorney granted to Roger. After a bench trial, the circuit court ruled that the statute of limitations barred some of Ellis's claims, that she lacked standing to bring other claims, that the alleged gifts would not be set aside, and that Roger's accounting was adequate. We affirm the circuit court.

## I. *Facts and Procedural History*

Edward Thompson was the father of four children: appellant Margaret Ellis, appellee Roger Thompson, Phillip Thompson, and Barbara Mugge. Roger and Frances Thompson are husband and wife. In August 1997, Edward executed a power of attorney appointing Roger as his attorney-in-fact to act on Edward's behalf and for all purposes. That power of attorney was recorded on January 31, 2002.

On November 12, 1997, Roger and Frances were added as "agents" authorized to sign on Edward's accounts at First National Bank and were listed as "authorized signers" only.

On December 21, 2000, Roger and Phillip Thompson and their wives purchased two tracts totaling approximately 685 acres from Edward. They executed a promissory note for the purchase price in the amount of $256,556. The terms of the note were seven annual payments of $39,017.28 at 6 percent interest, and if not paid timely, then the entire note would bear interest at 10 percent. The note also contains an undated, typed statement signed by Edward that the note was to be canceled and forgiven in the event of his death. A copy of the note containing handwritten statements purportedly signed by Edward that payments were waived by gift on various dates was introduced into evidence.[1]

In 2002, Edward received over $400,000 from the estate of his mother, Rosa Thompson, who died in 1997.

---

[1]Previously, Edward had made other conveyances to Roger and Phillip: a February 1993 quitclaim deed from Edward and his then wife to Roger and Phillip and a November 1998 deed by gift to Roger and Phillip.

Edward died on July 18, 2006. Upon Edward's death, Roger opened the estate and was appointed personal representative. Ellis responded with a petition to set aside the will and to contest the will. On January 24, 2007, an agreed order was entered setting aside the will. On February 21, 2007, Roger filed an inventory in the probate case, and Ellis filed an objection to the inventory, claiming that it understated the decedent's property.

Ellis filed the present case on May 21, 2008, separate from the probate case, asserting causes of action for breach of fiduciary duty and conversion and seeking an accounting and damages. Ellis alleged that Roger had failed to properly inventory Edward's property upon Edward's death; that Roger had transferred property from Edward to himself using the power of attorney; that Roger had failed to account for the inheritance Edward received from his mother's estate; that Roger and Phillip failed to pay the purchase price for the real property they purchased from Edward, claiming that Edward waived the payments as gifts; that Edward was incompetent to make gifts; and that Roger and Frances had converted Edward's property for their own use.

On June 12, 2008, Roger and Frances answered Ellis's complaint, denying that she had any causes of action. They also asserted various affirmative defenses, including lack of standing and the statute of limitations.

On September 24, 2014, the circuit court entered an order directing Roger and Frances to submit an accounting by October 22, 2014, and to make a good-faith effort to obtain all the records necessary to complete the accounting.[2]

---

[2]There is no explanation for the gap from 2008 until 2014.

On October 23, 2014, Roger filed an affidavit averring that he had, with his attorney's assistance, reviewed Edward's available bank records dating back to 2002 and had compiled a partial list of checks written on the account. He asserted that most of the checks were written with Edward's knowledge and permission or based on his (Edward's) previous customs. Roger stated that the checks written for cash were to pay Edward's caretaker or to reimburse her for Edward's household expenses. He also said that he did not sign any checks pursuant to the power of attorney because he had been added to the account to help pay his father's bills that he was instructed to pay. The affidavit stated that neither Edward nor Roger used the checks in sequential order and that Roger did not have copies of some checks. Finally, Roger said that checks were consistently written for certain routine expenses, including Edward's medications, car tags, insurance, and monthly utility payments.

On December 17, 2014, Ellis filed a pleading raising multiple issues. First, she objected to the affidavit filed by Roger as being an accounting. She asserted that the affidavit lacked sufficient documentation to be considered an accounting. Ellis further alleged that on December 12, 2014, Roger did file an accounting in the probate case that showed he was self-dealing by paying his farming operations from estate funds without probate court authorization.

A hearing on Ellis's objections was held in March 2016, and the court ruled that Roger's affidavit was not sufficient as an accounting. On the day of the hearing, Roger and Frances amended their prior accounting with a spreadsheet prepared by counsel.

4

On March 30, 2016, Ellis filed a renewed objection to Roger's accounting. She repeated her original objections to Roger's October 2014 affidavit. As for the updated accounting, Ellis asserted that numerous checks were missing, that income was omitted, that receipts and disbursements were unaccounted for, that Roger and Frances may have destroyed financial records, and that checks listed in the previous spreadsheet were not included in the revised spreadsheet. Ellis further objected to numerous disbursements as not being proper expenses, such as checks for cash, checks for Roger and his children, and checks to Roger's farming operations. She also asserted that Roger failed to account for any CDs or the promissory note and that documentation was lacking for the disbursements.

At trial, the court, with the agreement of the parties, bifurcated the issues, with Roger and Frances presenting their case first as they had the burden of proof to show they handled Edward's accounts properly. At the conclusion of Roger and Frances's case, the circuit court ruled from the bench and found that, based on the circumstances, the accounting was adequate and showed how the money had been spent three years before Edward's death. The court found no evidence showing a pattern of self-dealing.

Ellis then presented her case for breach of fiduciary duty and conversion. Ellis did not believe Edward was competent and thought he was influenced by Roger and Frances. She presented evidence that Edward had Alzheimer's and dementia and that there was evidence possibly indicating Parkinson's and depression. She also produced evidence that Edward owned several CDs but that his interest income had declined from $15,239 in 1995 to $995 in 2002 without any explanation from Roger and Frances.

5

The circuit court took the matter under advisement and entered its order on April 4, 2017. The court found that Ellis's claim that Roger had breached his fiduciary duty under the power of attorney was barred by the three-year statute of limitations because there was no evidence presented that Roger used the power of attorney prior to the expiration of the statute of limitations. The court found that a fiduciary duty was owed to Edward, the grantor of the power of attorney, not Ellis. The court also concluded—despite its earlier finding that there was no evidence of self-dealing—that Ellis lacked standing to bring a conversion claim against Roger and Frances for conversion of assets belonging to Edward. According to the court, any such cause of action occurred while Edward was still alive and would have expired three years after the wrongful act constituting the conversion.

Regarding undue influence, the court ruled that although Ellis contended that the checks written on Edward's account for cash, to Roger and Phillip's farming operation, and to other family members were not "gifts," Roger and Frances had presented clear and convincing evidence at trial to overcome the presumption that any "gifts" arising from their relationship with Edward were void. The court noted the contradictory evidence as to Edward's competency. The court found that although Edward took medication for mental conditions, his mental condition was not severe, and his medications were not mind altering. Based on the record before it, the circuit court declined to set aside any gifts made by Edward.

Finally, the court found that the bank records used to complete Roger's accounting accurately showed Edward's financial condition at the time of his death. The court further

6

found that there was no proof that Roger or Frances destroyed or hid these bank records. The court dismissed Ellis's complaint with prejudice. This appeal followed.

## II.  *Standard of Review*

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence.[3] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made.[4] Due regard shall be given to the opportunity of the circuit court to judge the credibility of the witnesses.[5]

## III.  *Discussion*

For her first point, Ellis argues that the circuit court erred in applying the statute of limitations to her claim that Roger breached his fiduciary duties. She presses three separate points under this heading. First, she argues that Roger cannot interpose that statute of limitations. Second, she argues that because Roger had a long fiduciary relationship with his father, all transactions during that relationship should be considered. Third, she argues that Roger and Frances were fiduciaries because they were named as "agents" on the signature card for Edward's bank accounts. We are not persuaded.

---

[3] *Tadlock v. Moncus*, 2013 Ark. App. 363, 428 S.W.3d 526.

[4] *Id.*

[5] Ark. R. Civ. P. 52(a)(1).

7

The statute of limitations for breach of fiduciary duty is three years.[6] The circuit court ruled that the statute cut off any transactions occurring more than three years prior to Ellis's filing of her complaint. Ellis argues that this was error because, according to Ellis, Roger cannot assert a statute-of-limitations defense for various reasons, including estoppel. We are not persuaded. The authority she cites is distinguishable because this is not a trust, Roger was not a trustee, and there was no evidence that Roger refused to return money or property obtained by use of the power of attorney. Most importantly, Ellis never made these arguments to the circuit court. Arguments raised for the first time on appeal will not be considered.[7] If the record does not reflect that the argument, or any similar argument, was made to the circuit court, we will not reach the merits of the argument on appeal.[8]

Next, Ellis argues that the circuit court should have considered the entire length of the fiduciary relationship between Edward and Roger and all transactions that occurred during that time. We disagree because our supreme court has rejected a very similar argument.

In its ruling, the circuit court relied on *Stoltz*,[9] but Ellis does not address that case. The *Stoltz* court declined to depart from the holding of *Chapman v. Alexander*,[10] an earlier

---

[6]Ark. Code Ann. § 16-56-105 (Repl. 2005); *Stoltz v. Friday*, 325 Ark. 399, 405, 926 S.W.2d 438, 442 (1996).

[7]*Burke v. Strange*, 335 Ark. 328, 983 S.W.2d 389 (1998).

[8]*Id.*

[9]*Supra.*

[10]307 Ark. 87, 817 S.W.2d 425 (1991).

legal-malpractice action, where the court considered but rejected the "termination of employment" rule, which provides that the statute of limitations does not begin to run until the attorney-client, doctor-patient, or other professional–client relationship has ended. Ellis's argument that the entire length of the fiduciary relationship should be looked at in ascertaining whether there has been a breach of duty is analogous to the "termination of employment" rule rejected by the supreme court.

As her final argument under this topic, Ellis argues that the circuit court only considered her claims for breach of fiduciary duty arising under the power of attorney Edward granted to Roger instead of also considering evidence dating back to 1997 when Roger was added as a signatory to Edward's bank accounts. However, she does not explain how this would change the analysis of the statute-of-limitations issue. She also does not offer any authority to support her suggestion that being a signatory on a bank account gives rise to a fiduciary relationship or, for that matter, that any such fiduciary relationship would have extended to her. The only basis for this argument is that the signature card had "agent" typed next to the names of Roger and Frances below the signature line. There was no testimony concerning what this designation meant or what the parties (Edward, Roger, and Frances) intended by it. It is an appellant's burden to demonstrate and explain reversible error.[11] Moreover, this court may refuse to consider an argument when the appellant fails to cite any legal authority, and the failure to cite authority or make a convincing argument

---

[11] *See Fayetteville Express Pipeline, LLC v. Ark. Pub. Serv. Comm'n*, 2017 Ark. App. 557, 533 S.W.3d 106.

is sufficient reason for affirmance.[12] The circuit court did not err in its application of the statute of limitations.

For her second point, Ellis argues that the circuit court erred in failing to set aside "gifts" Edward made to Roger, Frances, and others. She contends that Roger and Frances failed to prove all the elements of an inter vivos gift. Specifically, she argues that Roger and Frances failed to prove that Edward was mentally competent at the time of the various transactions. She further argues that Roger and Frances failed to offer any proof on the other elements of an inter vivos gift. However, she misstates the burden Roger and Frances bore as fiduciaries.

It was undisputed that Roger held a power of attorney from his father. A person who holds power of attorney is an agent, and it has long been recognized that a fiduciary relationship exists between principal and agent in respect to matters within the scope of the agency.[13] Transactions between persons connected by fiduciary relations will be closely scrutinized when the relation implies that one person has controlling influence over the other.[14] It is generally recognized that in order to invalidate a contract, undue influence must operate to deprive a party of his or her free will.[15] When unfair advantage in a transaction is rendered probable because of superior knowledge of the matter derived from

[12]*Goodman v. Goodman*, 2019 Ark. App. 75.

[13]*Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995); *Yahraus v. Cont'l Oil Co.*, 218 Ark. 872, 239 S.W.2d 594 (1951).

[14]*Dent, supra*; *Hawkins v. Randolph*, 149 Ark. 124, 231 S.W. 556 (1921).

[15]*Dent, supra*.

a fiduciary relationship; from overmastering influence on the one side; or from weakness, dependence, or trust justifiably reposed on the other side, it is incumbent on the stronger party to show that no deception was practiced.[16] Also, in certain circumstances a presumption of undue influence may arise in connection with the execution of a deed.[17]

The invocation of the presumption of invalidity is really the product of a two–prong test. Before the presumption of invalidity would ever be invoked, the transferring party must not only claim that the receiving party was the dominant one, but must also establish that that party occupied such a superior position of dominance or advantage as would imply a dominating influence sufficient to amount to duress, coercion, or undue influence; once this has been established, the presumption of involuntariness on the part of the transferring party is invoked, and the burden then shifts to the donee to prove that the transfers were voluntary.[18] In other words, the simple existence of a dominant party in the relationship does not, in and of itself, invoke the presumption of invalidity; rather, the party claiming duress or coercion must establish further sufficient evidence to invoke the presumption, after which the burden to prove otherwise rests with the dominant party.[19]

However, even in fiduciary relationships our courts have refused to find undue influence in the transfer of property when there has been no showing that the donees said

---

[16]*Id.*; *see also* Restatement (Second) of Contracts § 177 (Am Law Inst. 1981).

[17]*See Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999).

[18]*Id.*

[19]*Id.*

or did anything to put the donor in a position of fear or that they committed fraud or overreached in any way.[20] This is true even when there is evidence to raise suspicion about impure motives.[21]

Ellis argues that Roger and Frances failed to carry their burden of proving by clear and convincing evidence that Edward was of sound mind at the time of the various transactions. She argues that Roger testified that there was a time when Edward was no longer able to handle his own business but was unsure of exactly when the memory loss began and when Edward was unable to handle his own affairs. She also points to other instances when Roger or Frances could not recall certain aspects of Edward's condition. Ellis also relies on testimony from her and her husband that it was their opinion Edward was not competent as early as of 2002 and that he never improved. She also relies on medical records showing that by March 2002, Edward's doctor had documented that he had dementia, evidence of Parkinson's, and depression and that Edward was having more behavioral changes. The test on appeal is not whether there is clear and convincing evidence to support the circuit court's findings, but whether we can say that the circuit court's findings are clearly erroneous.[22]

Essentially, Ellis's argument is that the circuit court should have weighed the evidence in her favor by giving more weight to the medical evidence. The circuit court

---

[20]*Howard v. Glaze*, 292 Ark. 28, 727 S.W.2d 843 (1987).

[21]*Id*. at 31, 727 S.W.2d at 846.

[22]*Bellis v. Bellis*, 75 Ark. App. 213, 216, 56 S.W.3d 396, 398 (2001).

noted the contradictory evidence as to Edward's competency but did not make an explicit finding as to competency. Instead, the court found that although Edward took medication for mental conditions, his mental condition was not severe, and his medications were not mind altering. The court's declining to set aside the gifts is an implicit finding of competency. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.[23]

Finally, Ellis argues in her third point that the circuit court erred in ruling that the accounting filed by Roger and Frances satisfied the requirements of Ark. Code Ann. § 28-52-103 because the court applied the wrong burden of proof when it concluded that the accounting was proper because the accounting accurately showed Edward's financial condition at the time of his death. However, the only argument Ellis makes about the burden of proof is that Roger and Frances have the burden of proof to overcome the presumption that transactions with Edward were void. That is addressed above in her second point.

Instead, Ellis argues that the "accounting" filed by Roger was deficient and points out several perceived flaws. She asserts that the circuit court's failure to properly scrutinize the accounting led the court to dismiss her other causes of action and that the court's ruling on the accounting should be reversed, leading to the reversal of the dismissal of her other causes of action based on her request for an accounting. However, the court's dismissal of Ellis's breach-of-fiduciary-duty claim was based on the expiration of the statute of

---

[23]*Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007).

limitations, not the failure to properly scrutinize the accounting. Likewise, her conversion claim failed for lack of standing, not the accounting.

Section 28-52-103 does not apply in this case. The statute governs accountings filed by the personal representative during the probate of a decedent's estate.[24] This is not the probate of Edward's estate. Moreover, the probate court handling Edward's estate was the proper forum for this proceeding on the accounting.[25]

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Andrea Brock*, for appellant.

*Woodruff Law Firm, P.A.*, by: *Jennifer Woodruff Douglas*; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.

---

[24]*In re Estate of Kemp*, 2014 Ark. App. 160, 433 S.W.3d 911.

[25]*See, e.g.*, *Estates of McKnight v. Bank of Am., N.A.*, 372 Ark. 376, 380, 277 S.W.3d 173, 177 (2008); *In re Guardianship of Vesa*, 319 Ark. 574, 892 S.W.2d 491 (1995).