Cite as 2022 Ark. App. 321

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-20-312

| | |
|---|---|
| ROBBIE R. MARLEY, DEBORA L. JOHNSON, AND ELIZABETH A. RUBLE <br><br> APPELLANTS <br><br> V. <br><br> RODNEY H. GHAN, P.A. <br><br> APPELLEE | Opinion Delivered September 14, 2022 <br><br> APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-18-179] <br><br> HONORABLE JOHN C. THREET, JUDGE <br><br> AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Robbie Marley, Debora Johnson, and Elizabeth Ruble appeal the Washington County Circuit Court judgment entered in favor of Rodney H. Ghan, P.A., following a bench trial. We affirm the judgment.

This case arises from a real estate transaction, and a brief explanation of the parties and their relationships is necessary. The appellants, Robbie, Debora, and Elizabeth, are sisters, and their father is Bob VanStavern. The appellee, Rodney H. Ghan, P.A. (Ghan), is a commercial real estate company owned by Rodney H. Ghan.

VanStavern and his wife owned commercial property in Fayetteville (the property), which is the subject of the real estate transaction. In 1990, VanStavern conveyed the property to Daybreak Properties, Inc., a Missouri corporation (Daybreak Missouri), an entity owned by VanStavern and his wife. Thereafter, VanStavern transferred the property to Daybreak

Properties, Inc., an Arkansas corporation (Daybreak Arkansas), another entity owned by VanStavern and his wife.

On January 29, 2007, VanStavern negotiated a ground lease[1] with Ghan, who was working for Smitco Eateries, Inc. (Smitco). Smitco leased the property for the location of a Popeye's franchise. The lease states that the property is located at "2100 W. 6th, Fayetteville, Washington County, Arkansas."[2]

The lease included a paragraph titled "Broker's Fee," which states that "R.H. Ghan Commercial Properties (Broker) has negotiated this lease"[3] and that Smitco agreed to pay the broker a negotiated fee of 6 percent of each monthly rental payment paid during the term of the lease, including any renewal, extension, or expansion. The paragraph further provided that

> [i]f [Smitco] during the term of this Lease or any extension, expansion or renewal period thereof, or within 180 days of the expiration of this Lease, or any extension, expansion or renewal period thereof, purchases the property herein leased, Landlord agrees to pay Broker, in Sebastian County, Arkansas, a negotiated fee of **six (6%)** percent of the sales price upon closing of the sale of the property.

---

[1]At the bench trial, the parties defined ground lease as a lease of the "plain dirt." The tenant can build on the property, but the improvements revert to the landlord at the end of the lease term.

[2]The lease further states that the property is "more particularly described on Exhibit B," but the lease does not contain an exhibit B. The acreage amount was left blank.

[3]Rodney Ghan testified that he registered the fictitious name of R.H. Ghan Commercial Properties to Rodney H. Ghan, P.A.

Following the lease's execution, Smitco took possession of the property and built a Popeye's franchise. Smitco paid monthly rents to VanStavern as well as the monthly rental commission to Ghan.

In 2014, VanStavern transferred the property from Daybreak Arkansas to his daughters. On May 4, 2017, the daughters sold the property to Smitco for $550,000. Following the sale, Ghan demanded that the daughters pay the 6 percent commission, but they refused to pay. Thus, on November 15, 2018, Ghan filed an amended complaint against the daughters alleging that they failed to pay the commission pursuant to the lease.[4] The case proceeded to a bench trial on December 21, 2019.

At trial, Ghan introduced the January 2007 lease, which was signed by VanStavern without reference to Daybreak Arkansas. It also introduced a memorandum of lease agreement between Daybreak Arkansas and Smitco Eateries recorded in Washington County in May 2007. The memorandum states that Daybreak Arkansas and Smitco entered into a lease on April 30, 2007, and that the lease term commenced on May 9, 2007.

Ghan additionally introduced a memorandum of assignment of lease and rents from Daybreak Arkansas to the daughters recorded in Washington County in July 2014. The memorandum references a July 9, 2014 assignment in which "Assignor assigned to Assignee, and Assignee accepted such assignment of a certain lease of land to Smitco Eateries, Inc., an

---

[4]The amended complaint initially included Ghan & Cooper Commercial Properties, LLC, d/b/a R.H. Ghan Commercial Properties as a plaintiff and VanStavern as a defendant; however, they were dismissed at trial.

3

Arkansas Corporation, in Fayetteville, County of Washington, State of Arkansas." The memorandum includes a legal description of 3.6 acres as well as the daughters' signatures.

At trial, VanStavern testified that he was the president of Daybreak Arkansas and Daybreak Missouri and that he ran the companies. He stated that "the only location [he] ever signed with Smitco was this [property] in Fayetteville, Arkansas." He could not recall whether he entered into more than one lease agreement. VanStavern had knowledge of only the January 2007 lease.

At the conclusion of the trial, the court orally ruled in favor of Ghan and awarded it $33,000 for the 6 percent commission of the $550,000 sales price. In its oral ruling, the court noted that "the only lease that's had any evidence put in front of the Court is the [January 2007] lease that was introduced. . . . [T]here is no evidence of another lease." The court entered a judgment on January 14, 2020. This appeal followed.

Following a bench trial, our standard of review asks whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Hartness v. Nuckles*, 2015 Ark. 444, 475 S.W.3d 558. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Tadlock v. Moncus*, 2013 Ark. App. 363, 428 S.W.3d 526. Disputed facts and determinations of witness credibility are within the province of the trier of fact. *Id.* For questions of law, our review is de novo. *See Gulfco La., Inc. v. Brantley*, 2013 Ark. 367, 430 S.W.3d 7.

On appeal, the daughters first argue that the circuit court erred by finding they were obligated to pay Ghan because Ghan presented no evidence that they had accepted an assignment of the January 2007 lease from VanStavern. They point out that the January 2007 lease was not recorded and that the recorded memorandum of the lease agreement describes an April 2007 lease. They acknowledge the July 2014 recorded memorandum of assignments of lease and rents reflecting that they signed and accepted an assignment of a Smitco lease. However, they note that the memorandum does not include the lease date, and they point out that the property description includes more acreage than the property housing the Popeye's franchise.

We find the daughters' argument without merit. The daughters cite no authority concerning the requirements of acceptance of an assignment. We may refuse to consider an argument when the appellant fails to cite any legal authority. *Garcia v. Garcia*, 2018 Ark. App. 146, 544 S.W.3d 96. Even so, we note that Arkansas law presumes acceptance when an assignment benefits the party. *See Exchange Bank & Tr. Co. v. Ark. Grain Co.*, 169 Ark. 1084, 277 S.W. 871 (1925); *see also* 29 Richard A. Lord, Williston on Contracts § 74:5 (4th ed.), Westlaw (database updated May 2022) (stating that notice to the assignee is deemed unnecessary where the assignment is for value). Moreover, a party can ratify an assignment even if the assignee was unaware of the assignment when it was made. 6A C.J.S. *Assignments* § 80 (2020) Westlaw (database updated August 2022). In this case, following VanStavern's transfer of the property to his daughters, Smitco remained on the property, operating the Popeye's franchise and paying rent. The daughters later sold the property to Smitco.

5

In their brief, the daughters suggest that because Ghan did not introduce the April 2007 lease at trial, it is unknown whether that lease required the landlord to pay Ghan a commission. The daughters' argument is a request to reweigh the evidence, which we cannot do. *Robinson v. Murphy*, 2020 Ark. App. 293, 601 S.W.3d 450. In its oral ruling, the court found no evidence of an April 2007 lease. Accordingly, given these circumstances, we cannot say that the circuit court's finding of an assignment was clearly erroneous.

The daughters next argue that the circuit court erred by finding that Ghan could enforce the January 2007 lease because no valid contract existed between Ghan and VanStavern; thus, no valid contract existed between Ghan and VanStavern's daughters. Specifically, they claim that the evidence does not establish the essential elements of a contract—precise terms, consideration, or mutuality of contract—between Ghan and VanStavern.

The daughters' argument is unconvincing. If a contract is made for the benefit of a third party, then it is actionable by such third party if there is substantial evidence of a clear intention to benefit that third party. *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995); *Howell v. Worth James Constr. Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976). Further,

> [i]t is not necessary that consideration move to the obligor from the third party beneficiary. If there is consideration between the parties, then a standard contract is created. There must be consideration between the obligor and the obligee, but the absence of consideration or contract between the obligor and the third party beneficiary is the fundamental characteristic of a third party beneficiary contract.

*Baker v. Bank of Ne. Ark.*, 271 Ark. 948, 951, 611 S.W.2d 783, 785 (1981).

In this case, the lease explicitly requires the landlord to pay Ghan a commission if Smitco purchased the property. Thus, the lease clearly intended to benefit Ghan. Further, as a third-party beneficiary, Ghan need not establish the elements of a contract between it and VanStavern. Accordingly, we find no error on this point.

The daughters next argue that the circuit court erred by finding that Ghan could enforce the January 2007 lease because Arkansas law requires a realtor to have a contract with a party to recover a commission from that party. In making this argument, the daughters rely on *Bailey v. Montgomery*, 31 Ark. App. 1, 786 S.W.2d 594 (1990), and they point out that Ghan did not have a contract with either them or their father.

The daughters misconstrue the *Bailey* case. In *Bailey*, a real estate broker sued the buyers on a contract between the buyer and seller. *Bailey*, 31 Ark. App. 1, 786 S.W.2d 594. Because the contract obliged only the seller to pay the broker's commission, the court held that the broker could not collect the commission from the buyers, and it declined to find that the broker was a third-party beneficiary. *Id.* The court stated,

> Nor can we consider [the broker] a third party beneficiary of the contract between appellants and the sellers. "[T]he presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties."

*Bailey*, 31 Ark. App. at 7, 786 S.W.2d at 597 (quoting *Howell*, 259 Ark. at 629, 535 S.W.2d at 828). Here, unlike the contract in *Bailey*, the lease explicitly provides that the landlord pay Ghan's commission. Accordingly, *Bailey* is distinguishable, and we find no error on this point.

The daughters additionally argue that the circuit court erred by finding that the January 2007 lease was valid because the lease did not contain a legal property description. They point out that the lease's property description references exhibits that are missing from the lease.[5]

A real property contract must include a definite description of the subject property to comply with the statute of frauds. *Price v. Willbanks*, 2009 Ark. App. 849, 374 S.W.3d 28. If a writing furnishes a means by which the realty can be identified, it need not describe the property with the particularity required for deeds. *Id.* We have stated that a contract's designation of the premises by street address satisfies the statute of frauds. *Sloop v. Kiker*, 2016 Ark. App. 125, 484 S.W.3d 696. Here, the lease agreement included the street address of the property—2100 West Sixth Street, Fayetteville, Washington County, Arkansas.

The daughters finally argue that the court erred by finding the January 2007 lease was valid because VanStavern did not sign the lease as Daybreak's agent. The lease includes only VanStavern's name, and the daughters point out that Daybreak legally owned the property.

On this point, the daughters again fail to cite any legal authority. As we have stated, we may refuse to consider an argument when the appellant fails to cite any legal authority. *Garcia*, 2018 Ark. App. 146, 544 S.W.3d 96. Even so, we point out that a principal may still be bound by the agent's acts if the principal subsequently ratified those acts. 1 Howard W.

---

[5]Under this point, to the extent that the daughters argue the lease agreement is not a final document, the daughters fail to cite any legal authority. We may refuse to consider an argument when the appellant fails to cite any legal authority. *Garcia*, 2018 Ark. App. 146, 544 S.W.3d 96.

Brill & Christian H. Brill, *Arkansas Law of Damages* § 15:1 (6th ed. 2014). The substance of the doctrine of ratification is the idea of confirmation after conduct, and the doctrine is based on evidence of such complex factual elements as knowledge of the facts, acceptance of benefits, change of position, agency, and approval of conduct. *Arnold v. All Am. Assur. Co.*, 255 Ark. 275, 499 S.W.2d 861 (1973).

In this case, following the lease agreement, Smitco operated a Popeye's franchise on the property for nearly ten years and paid rental payments. Regardless of how VanStavern signed the lease or his authority to bind Daybreak, the lease was ratified. Accordingly, we find no error on this point. We therefore affirm the judgment.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Bishop Law Firm*, by: *Matt Bishop*, for appellants.

*Kutak Rock LLP*, by: *Samantha Blassingame* and *Alexis E. Stevens*, for appellee.